438 So.2d 380 (1983)
Ian LIGHTBOURNE, Appellant,
v.
STATE of Florida, Appellee.
No. 60871.
Supreme Court of Florida.
September 15, 1983.
Rehearing Denied October 26, 1983.
*383 Jerry T. Lockett, Sp. Asst. Public Defender, Tavares, for appellant.
Jim Smith, Atty. Gen., and Sean Daly, Asst. Atty. Gen., Daytona Beach, for appellee.
ADKINS, Justice.
We have for review a judgment of conviction and a sentence of death imposed by a trial court. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellant, Ian Lightbourne, was convicted of first-degree murder and as recommended by the jury, was sentenced to death. By appeal he seeks a reversal of his conviction and his sentence. For the reasons set out below we affirm both appellant's conviction and the sentence of death imposed upon him. The facts are complex and will be recited together with their respective issues which appellant raises on appeal.

I.
The indictment reads in part:
[T]hat IAN LIGH OURNE of the County of Marion and State of Florida, on the 16th or 17th day of January, 1981, in the County and State aforesaid, did unlawfully, from a premeditated design to effect the death of a human being and/or while engaged in the perpetration of a burglary and/or involuntary sexual battery, kill and murder Nancy A. O'Farrell, a human being, by shooting her with a firearm, to-wit: a .25 caliber automatic pistol, a more particular description being to this Body unknown, in violation of Florida Statute 782.04.
Appellant's (hereinafter defendant) initial claim is that the indictment does not *384 allege the time of the offense "as definitely as possible" under Florida Rule of Criminal Procedure 3.140(d)(3). However, it is not necessary that an indictment or information state the exact date of the offense if such date is not known. Rather the indictment or information in such cases will be deemed sufficient if it is alleged that the offense occurred within stated specific time limits. Sparks v. State, 273 So.2d 74 (Fla. 1973); State v. Bandi, 338 So.2d 75 (Fla. 4th DCA 1976), cert. denied, 344 So.2d 323 (Fla. 1977).
The statement of particulars given by the state narrowed the time period for the alleged offense to sometime between 5:30 p.m. on January 16, 1981, and 4:00 p.m. on January 17, 1981. Furthermore, this time frame was based on scientific evidence obtained at the crime scene and during the subsequent autopsy and later presented at trial. Scientific experts could only narrow the time of death to approximately midnight of January 16, 1981.
Given the limited information possessed by the state relative to the time of death of the decedent, the indictment sufficiently charged the time of the offense and notified the defendant of the time of the murder as specifically as possible. As such, the trial court did not err in denying the defendant's motion to dismiss the indictment on this ground. Fla.R.Crim.P. 3.140(d)(3).
The defendant also challenges the indictment on grounds of overbreadth and vagueness, arguing that the state, by charging in the disjunctive in this case, has effected the result of charging two inconsistent offenses, that is felony murder and premeditated murder.
An indictment or information will be dismissed for vagueness only if it is so vague, indistinct and indefinite so as to mislead a defendant or embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense. State v. Dilworth, 397 So.2d 292 (Fla. 1981); State v. Black, 385 So.2d 1372 (Fla. 1980); Fla.R.Crim.P. 3.140(o).
Under section 782.04, Florida Statutes (1981), the offense of first-degree murder may be committed in several ways, including murder by premeditated design or a felony murder supported by various felonies, among which are included the felonies of burglary and sexual battery. The instant indictment tracked the statute and adequately placed the defendant on notice that he was charged with first-degree murder resulting from any one or a combination of the three specific methods in the indictment. The single offense of first-degree murder may be proven by alternate methods, so it follows that the charging instrument should be free to include such alternate bases for conviction.
The allegations of the indictment are sufficient to charge murder in the first degree, regardless of whether the murder was committed with premeditated design or in the perpetration of the enumerated felonies. Knight v. State, 338 So.2d 201 (Fla. 1976); Barton v. State, 193 So.2d 618 (Fla. 2d DCA 1966), cert. denied, 201 So.2d 459 (Fla. 1967). Consequently, the indictment was not vague or overbroad since it specifically apprised the defendant of the criminal acts allegedly committed which support the charge of first-degree murder.
The defendant's final challenge under Point I is that the indictment could be construed as charging only felony murder and that charging only felony murder and proving premeditated murder is impermissible under Ables v. State, 338 So.2d 1095 (Fla. 1st DCA 1976), cert. denied, 346 So.2d 1247 (Fla. 1977). The indictment herein clearly incorporates an allegation that the murder was premeditated in design. The Ables decision involved a case in which premeditated murder was never alleged, and as such that case is clearly distinguishable from the instant case.

II.
The defendant claims that the trial court erred in denying his second motion to dismiss the indictment, arguing that the aggravating circumstances to be applied at *385 the sentencing stage in capital felony cases must be originally alleged in the indictment in order to confer jurisdiction on a court to impose a sentence of death. If such allegations are not made, argues the defendant, death is not a permissible penalty, for it is now established that the sentencing process, as well as the trial itself, must satisfy the requirements of due process. See, Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).
The defendant's arguments raised under Point II are clearly without merit, having been previously addressed and rejected in Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). The trial court did not err in denying the defendant's motion to dismiss the indictment or to declare that death was not a possible penalty.

III.
The defendant raises a number of constitutional challenges to sections 775.082(1), 782.04(1), and 921.141, Florida Statutes, (1981). Such challenges for the most part have been previously considered and disposed of by this and other courts.
First, the defendant claims that section 775.082, by fixing the penalties for capital felony convictions, infringes on the principle of separation of power, eliminates judicial discretion at the sentencing stage, and is therefore unconstitutional. This argument is clearly misplaced. The constitutionality of this section has been repeatedly upheld. Antone v. State, 382 So.2d 1205 (Fla.), cert. denied, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980); Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Additionally, the determination of maximum and minimum penalties is a matter for the legislature. Also, when a statutory sentence is not cruel and unusual on its face it will be upheld against an attack based on separation of powers grounds. Sowell v. State, 342 So.2d 969 (Fla. 1977).
Second, the defendant attacks the constitutionality of section 921.141, arguing that the aggravating and mitigating circumstances contained in the statute are impermissibly vague and overbroad. This Court has ruled on numerous occasions upholding the constitutionality of the section, finding that the statutorily prescribed circumstances were not vague but rather provided "[m]eaningful restraints and guidelines for the discretion of judge and jury." State v. Dixon, 283 So.2d at 9. Subsequent decisions buttress the constitutionality of the statute. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); Foster v. State, 369 So.2d 928 (Fla.), cert. denied, 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979); Alvord v. State.
The defendant's claim that the mitigating factors contained in section 921.141(6) are constitutionally deficient because limited by statute is without merit. In Sireci v. State and Songer v. State, 419 So.2d 1044 (Fla. 1982), all relevant factors were authorized to be presented in mitigation at the sentencing phase of the proceedings.
Finally, the defendant asks this Court to reverse its position on the constitutionality of Florida's death penalty statutes, sections 782.04(1)(a) and 775.082. This we decline to do. These statutes have been repeatedly upheld against claims of denial of due process and equal protection, as well as against assertions that they constitute cruel and unusual punishment. Proffitt v. Florida; Spinkellink v. Wainwright; Ferguson v. State, 417 So.2d 639 (Fla. 1982); Songer v. State, Booker v. State, 397 So.2d 910 (Fla.), cert. denied, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981); Antone v. State; Foster v. State; Martin v. State, 377 So.2d 706 (Fla. 1979); Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977); Alford v. State, 307 So.2d 433 (Fla. 1975), cert. denied, 428 U.S. 912, 96 S.Ct. 3227, 49 *386 L.Ed.2d 1221, Alvord v. State; Swan v. State, 322 So.2d 485 (Fla. 1975); State v. Dixon. The defendant has failed to establish or demonstrate that this Court's position on the death penalty statutes should be disturbed.
Accordingly, we hold that the trial court did not err in denying the defendant's motion to declare sections 775.082(1), 921.141 and 782.04(1) unconstitutional.

IV.
Defendant's basic claim under Point IV is that Theodore Chavers, a state witness at trial, was acting as an agent of the state during the time he shared a cell with the defendant at the Marion County jail. Consequently defendant argues that any statements made by him to Chavers should have been suppressed in that the defendant was unaware that he was talking to a government agent, and such statements were obtained in violation of his constitutionally guaranteed privilege against self incrimination and his right to counsel. U.S. Const. amend. V and VI; Art. I, § 12, Fla. Const.
The threshold inquiry here is whether or not Theodore Chavers was acting as an agent of the state. In Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the Supreme Court held that sixth amendment rights were violated when:
[T]here was used against [the defendant] at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel.
Id. at 206, 84 S.Ct. at 1203.
In United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Supreme Court applied Massiah in the context of using informant information and apparently recognized an active/passive dichotomy in determining whether or not an informant is to be deemed acting as an agent of the state in any particular case. The key to the Henry decision lies in the requirement that in order for an informant to be acting as a state agent he must, acting in concert with the state, actively stimulate or instigate conversation specifically designed to elicit incriminating information. If no active role is taken by the informant, but rather he merely remains passive and keeps his ears open for anything the defendant might wish to volunteer, then under the Henry analysis there is no agency relationship which would trigger the fifth and sixth amendment protections.
In Henry the Court found that the informant, Nichols, was acting under instructions as a paid informant for the government. In return for information he was given money and this arrangement was mutually understood. In the instant case there is nothing in the record establishing that the informant Chavers had any prearranged guarantee of money in return for information, and it appears that the two hundred dollars that he did receive from the Marion County Sheriff's Department was drawn from a general reward fund and not given as an inducement to elicit information.
Similarly, Investigator LaTorre's advice to the informant Chavers to keep his ears open does not constitute an attempt by the state to deliberately elicit incriminating statements. Without some promise or guarantee of compensation, some overt scheme in which the state took part, or some other evidence of prearrangement aimed at discovering incriminating information we are unwilling to elevate the state's actions in this case to an agency relationship with the informant Chavers.
The informant Chavers' testimony regarding statements made by the defendant was properly allowed into evidence and the trial court did not err in denying defendant's motion to suppress.

V.
The defendant claims that certain personal items taken from him at the time of his arrest on the weapons charge should have been held inadmissible in his trial on the murder charge. This argument is without merit.
*387 The taking into custody, by police, of property of arrested persons for safekeeping does not violate constitutional search and seizure protections. United States v. Gravitt, 484 F.2d 375 (5th Cir.1973), cert. denied, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974); United States v. Lipscomb, 435 F.2d 795 (5th Cir.1970), cert. denied, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971); Delatte v. State, 384 So.2d 245 (Fla. 1st DCA 1980).
Furthermore, after a person allows his personal effects to be taken into custody by police and inventoried, any privacy interest previously attached thereto is dissipated. United States v. Grill, 484 F.2d 990 (5th Cir.1973), cert. denied, 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974). The inventory of the defendant's belongings, occurring incident to a lawful arrest did not constitute an unreasonable search; subsequent inspection of the belongings by Officer LaTorre at the jail caused no greater intrusion than the original inventory. Since the belongings had already been exposed to police view under lawful circumstances, Officer LaTorre's inspection did not breach defendant's privacy interest in such belongings since any such right previously existing was relinquished by the defendant when he initially acquiesced to having his property inventoried. Id.
The trial court made no error in its denial of defendant's motion to suppress dated April 13, 1981.

VI.
The defendant argues that his detention by Officer McGowan prior to his arrest on the concealed weapons charge constituted an illegal stop under the rationale of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As a result, defendant argues, all items seized as a result of the "illegal" stop should be suppressed from evidence as "fruits of the poisonous tree" from which they issued. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We disagree.
We find, under the circumstances of this case, that no unlawful intrusion occurred when Officer McGowan approached Mr. Lightbourne for the purpose of investigating a suspicious car called to his attention by a concerned citizen of the community. Although defendant is correct in his assertion that the officers had no probable cause or well-founded suspicion that the defendant was about to commit or had committed any crime, under the instant facts such a showing was not necessary. The officers were responding to a call and were not acting on their own "hunch" as in the "roving patrol" cases.
In Terry, the Supreme Court noted that, "[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the street." 392 U.S. at 34, 88 S.Ct. at 1886 (White, J., concurring). This is so even under normal conditions with officers having no concrete suspicion on which to rely. Of course in such situations a person would be under no duty to remain, and could continue on his way if he chose to do so. That person, instructed the Terry Court, "absent special circumstances may not be detained or frisked but may refuse to cooperate and go on his way." Id. (Emphasis added.)
There exists, therefore, a distinction between an intrusion by police amounting to a "seizure" of the person and an encounter which intrudes upon no constitutionally protected interest. Terry v. Ohio; United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); United States v. Elmore, 595 F.2d 1036 (5th Cir.1979), cert. denied, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980).
Officer McGowan's investigation of the suspicious vehicle in this case does not rise to the level of an unconstitutional stop or seizure. Officer McGowan simply approached the parked car, asked defendant a few simple questions as to the reason for his presence there, his current address, and then ran a routine check on defendant's car and identification. Surely the average, reasonable *388 person, under similar circumstances, would not find the officer's actions unduly harsh. There is nothing in the record that would indicate that prior to defendant voluntarily relinquishing his driver's license to Officer McGowan he was not free to express an alternative wish to go on his way. The Court need not consider here the question of what would happen if a citizen, asked for identification under somewhat similar conditions, and who upon declining to surrender such identification, was placed under arrest. The implication is that in reality, rather than theory, one who has been so confronted by an officer is not free to leave.
The Supreme Court has repeatedly acknowledged the need for police questioning as a tool for effective enforcement of our criminal laws. United States v. Mendenhall. Florida courts have recognized that, in this context, law enforcement officers can indeed initiate contacts with citizens without creating a stop and seizure situation.
In State v. Rawlings, 391 So.2d 269 (Fla. 4th DCA), petition denied, 399 So.2d 1145 (Fla. 1981), an individual heard some shots outside his home and, upon investigating saw someone outside, but could not identify him. He called the police who arrived on the scene to find the defendant and a woman on the street in the vicinity. The officer engaged the defendant in conversation and while doing so, noticed the outline of a gun in his back pocket. The officer then conducted a pat-down search which revealed a .25 caliber pistol. The court in Rawlings held that the police in that case did not have a founded suspicion to justify a detention of the defendant. However, while the court agreed that there was insufficient evidence of an articulable basis of founded suspicion presented at the hearing on the motion to suppress, it nevertheless found that the police activity in this case did not constitute a detention of the defendant. Thus no showing of founded suspicion was required to justify the encounter. The court went on to add:
A mere contact between a citizen and a police officer which evokes voluntary cooperation on the part of the citizen is not a "seizure" within the meaning of the Fourth Amendment. If, during a lawful and extremely temporary encounter between a police officer and a citizen, probable cause is formulated to believe that the citizen is carrying a dangerous weapon, a frisk of that citizen's person is entirely justified to insure the safety of the police officer.
Id. at 270.
In Carter v. State, 370 So.2d 1181 (Fla. 4th DCA), cert. denied, 378 So.2d 343 (Fla. 1979), the court, citing Mullins v. State, 366 So.2d 1162 (Fla. 1978), cert. denied, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979), recognized that there would be instances where legitimate contact between police officers and citizens, not based upon founded suspicion of criminal activity or probable cause, might result in the subsequent arrest of the citizen for a crime detected by the officer as a result of the legitimate contact.
In the case sub judice we find that no "stop" or "seizure" of the defendant within the meaning of Terry and its progeny occurred prior to his removal from the car by Officer McGowan to conduct the pat-down search. Officer McGowan was simply performing his duty as a police officer to investigate a citizen complaint, motivated by a concern that the defendant might be in need of assistance. Once on the scene, the officer acted prudently for the protection of the safety of the concerned citizen and his neighbors in the community when he proceeded to check out the defendant's car and identification.
Given the fact that the initial contact was justified, the ultimate pat-down was also justified in that defendant's furtive movements and nervous appearance when observed by Officer McGowan formulated a reasonable ground to believe that the defendant was armed and potentially dangerous. United States v. Tharpe, 526 F.2d 326 (5th Cir.1976); Jackson v. State, 403 So.2d 1116 (Fla. 5th DCA 1981). The officer in this case acted with prudence and *389 was entitled to execute the limited search for weapons which might be used to assault him. Terry v. Ohio.
Based on the foregoing, we hold the officer's initial contact with the defendant to have been legitimately initiated for the purpose of investigating the citizen's call regarding a suspicious vehicle. We further hold that such contact as is evidenced by these facts did not constitute a stop or seizure of the defendant under Terry principles. Finally, the objectively discernible actions of the defendant provided Officer McGowan with a reasonable ground for searching the defendant for dangerous weapons. As such, we therefore hold that the gun and subsequent items found as a result of the search of the defendant's car incident to his lawful arrest on the weapon's charge, were correctly admitted into evidence by the trial court, and the court did not err in denying defendant's motion to suppress said items.

VII.
Defendant argues that certain videotaped statements made of him while he was being interrogated by police officers should have been held inadmissible under the rationale of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We disagree.
The record reflects that defendant was twice advised of his Miranda rights; at the Marion County jail when picked up, and prior to his interrogation at the Sheriff's Department Operations Center on February 3, 1981. When asked if he understood his rights, the defendant stated that he did, and that he had no reason not to talk to the interrogators. The interview was promptly terminated when defendant finally expressed his wish to state nothing further.
Defendant argues that sometime prior to the termination of the interview, he sought to conclude the questioning by asking whether he had to continue. This inquiry, argues the defendant, evidenced a reassertion of his right to cut off the interrogation, and therefore any statements subsequently made by defendant should have been inadmissible due to a lack of a second waiver of his Miranda rights.
The thrust of defendant's argument goes to whether or not the defendant did indeed reassert his right to remain silent when he inquired whether or not he must continue the interview. Under the facts of this case we cannot say that defendant wished to conclude the interview at the time he made his inquiry, and even if he did so intend, his subsequent actions evidenced a second knowing waiver after such attempt.
An express statement by an accused that he fully understands and waives his Miranda rights is not necessary for a valid waiver of those rights. This is as true mid-interview as it is at its inception. Waiver may be shown by attendant circumstances and by actions of the accused. North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); United States v. Hayes, 385 F.2d 375 (4th Cir.1967), cert. denied, 390 U.S. 1006, 88 S.Ct. 1250, 20 L.Ed.2d 106 (1968); State v. Craig, 237 So.2d 737 (Fla. 1970).
The fact that defendant knew of his right to end the interrogation is made manifest by his finally stating that he wished to say nothing further and ending his conversation at that point. We find that the mid-interview inquiry made by defendant did not rise to the level of a reassertion of his Miranda rights requiring a second waiver of those rights. However, even if such inquiry were to be held tantamount to a reassertion, we find that by his actions defendant once again waived his rights.
After the defendant questioned his need to go on, he voluntarily resumed his responses to the interviewers. There has been no showing made of any coercive measures taken by the interviewing officers to induce further testimony from defendant. Indeed, quite the opposite is reflected by the record. It is therefore apparent in this case that defendant's conduct evidenced a voluntary waiver of his known constitutional rights throughout the interrogation process.
*390 We find that the trial court properly considered the videotape and surrounding testimony in this case and clearly determined that the statements were freely and voluntarily made in light of Miranda. Consequently, the trial court did not err in admitting into evidence, over defendant's motion to suppress, the statements made by defendant during his custodial interrogation on February 3, 1981.

VIII.
The defendant argues that the trial court erred in denying defendant's motion to impose sanctions under Florida Rule of Criminal Procedure 3.220(j), for the state's failure to properly notify defendant of a deposition to be taken of a listed state witness. See Fla.R.Crim.P. 3.220(d).
As the record reflects, defendant's admitted motivation for filing the motion in the first place was to insure that all future depositions would be properly noticed, thus assuring defendant's opportunity to be present at those depositions. The trial court, after a hearing on the motion, ordered that all future depositions be properly noticed, thereby satisfying defendant's concern.
Finding that a motion under Rule 3.220(j) is properly addressed to the discretion of the trial court, and finding no abuse of discretion in this case, we hold there was no error in the court's decision not to impose sanctions greater than admonishment of both parties, as was done in this case.

IX.
The defendant claims that the death sentence imposed upon him in this case is not justified, arguing that it was based upon inappropriate aggravating circumstances, that the court failed to consider an unenumerated mitigating circumstance, and that the mitigating circumstances outweigh the aggravating circumstances.
In the instant case, following presentation of evidence at the penalty phase, the jury returned an advisory recommendation of death. In imposing the death penalty in this case the trial court found five aggravating and two mitigating factors. Of course the sentencing procedure is not merely a counting contest in which the number of aggravating factors is compared to the number of mitigating factors, with all factors having equal weight. State v. Dixon, 283 So.2d 1 (Fla. 1973). Rather the process involves a reasoned judgment as to what factual circumstances weigh heavily toward or against the imposition of the ultimate penalty.
We will first consider the mitigating factors due to their relatively straightforward import. The trial judge found that the defendant was twenty-one years old at the time of the crime and had no significant history of prior criminal activity. § 921.141(6)(a) and (g), Fla. Stat. (1981). Contrary to defendant's assertions, we find that the defendant's lack of past history of violence was not overlooked in consideration of sentence, but rather was not proved by the defendant. The trial court properly considered all matters.
We find no error in the court's failure to find the unenumerated mitigating factor of defendant's previous lack of violent history. Moreover, as will be shown hereafter, the strength of the aggravating circumstances in this case would have supported the imposition of the death penalty even had defendant's lack of past violent history been found as a mitigating factor.
Next we review the aggravating circumstances found to exist in this case.

Aggravating Circumstances
1. The capital felony was committed while the defendant was engaged in the commission of a burglary and sexual battery. § 921.141(5)(d), Fla. Stat. (1981). The evidence presented to the jury in this case, and considered by the learned trial judge at sentencing was clearly sufficient to establish the burglary and sexual battery. A screen had been cut and a window of victim's house had been pried open and broken. Testimony revealed that the defendant had *391 admitted surprising the victim in her home, that he took some money, a necklace, and a small silver coin bank. The phone cords had been severed. Viable sperm and semen traces were discovered in the victim's vagina indicating sexual relations at approximately the time of death. The defendant's blood type was consistent with semen and blood tests and factors present therein as testified to by experts. Pubic hair found at the crime scene was miscroscopically matched with those of the defendant. These facts and others contained in the record in this case are clearly sufficient to support the findings of burglary and sexual battery. As such they also stand sufficiently strong to support the aggravating circumstance under section 921.141(5)(d).
The evidence was sufficient to show premeditated design. During the burglary the victim was forced into acts of oral sex and intercourse as she begged him not to kill her. Despite her pleas that he not kill her, defendant fired a shot striking her on the left side of the head. The weapon was held against a pillow at the time it was fired. The examining doctor said she bled to death. Defendant's argument with respect to the unconstitutional effect of "automatic" aggravating circumstances solely in the felony murder context is inappropriate in this case.
2. The capital felony was committed for the purpose of avoiding or preventing a lawful arrest. § 921.141(5)(e), Fla. Stat. (1981). Once again the evidence presented at trial strongly supports this aggravating circumstance. Defendant admitted knowing the victim. Plainly the defendant killed to avoid identification and arrest. Proof of the requisite intent to avoid detection is strong in this case. See Riley v. State, 366 So.2d 19 (Fla. 1978).
3. The capital felony was committed for pecuniary gain. § 921.141(5)(f), Fla. Stat. (1981). Defendant says that the consideration of murder for pecuniary gain and murder while engaged in a burglary is a doubling of aggravating circumstances. We have held in applying the aggravating circumstances that the trial court does not improperly duplicate robbery and pecuniary gain where defendant committed the crime of rape in conjunction with the murder. Brown v. State, 381 So.2d 690 (Fla. 1980), cert. denied, 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981). There was adequate proof of rape.
4. The capital felony was especially heinous, atrocious, or cruel. § 921.141(5)(h), Fla. Stat. (1981). Taking into consideration the totality of circumstances in this case, the murder and the events leading up to its consummation were carried out in an unnecessarily torturous way toward the victim. The record reflects that the victim was forced to submit to sexual relations with defendant prior to her death, while pleading for her life, and we cannot say that the trial court's finding of heinousness is at material variance with the facts.
5. The capital felony was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. § 921.141(5)(i), Fla. Stat. (1981). We find that the defendant cut phone lines, entered the house at a time when others would most likely not be present, and effected the execution-style killing using a pillow placed between the murder weapon and the victim's head. As such, the trial court could properly find this aggravating circumstance.
For the foregoing reasons it is held that the trial court did not err in imposing the death sentence upon the defendant in accordance with the advisory recommendation of the jury.
In the performance of our constitutional duty we have reviewed the entire record below and have considered all issues presented on appeal. Therefore we now hold that the defendant's judgment of conviction and sentence of death are hereby affirmed.
It is so ordered.
ALDERMAN, C.J., and BOYD and EHRLICH, JJ., concur.
*392 McDONALD, J., concurs in the conviction, but dissents from the sentence.
OVERTON, J., dissents with an opinion.
OVERTON, Justice, dissenting.
I reluctantly dissent because I find the recent United States Supreme Court decision in United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), mandates a reversal under the circumstances of this case. A jailhouse informer was placed in a cell adjacent to the appellant's and was requested to keep his ears open. The investigating officer understood that the informant expected something in return for his information, and the informant was paid two hundred dollars in cash, in addition to being released nineteen days early in return for his services. These factors make the informant an agent of the state under the dictates of Henry, which requires suppression of the statements made by the appellant to the informant in the absence of Miranda warnings. I find we have no choice but to grant a new trial.