485 So.2d 1312 (1986)
STATE of Florida, Appellant,
v.
Orville Dalton KING, Appellee.
No. 85-1051.
District Court of Appeal of Florida, Fifth District.
March 6, 1986.
Rehearing Denied April 11, 1986.
Jim Smith, Atty. Gen., Tallahassee, and Ellen D. Phillips, Asst. Atty. Gen., Daytona Beach, for appellant.
James B. Gibson, Public Defender, and Kenneth Witts, Asst. Public Defender, Daytona Beach, for appellee.
COBB, Chief Judge.
The state appeals an order of the trial court granting a dispositive motion to suppress evidence. That order reads as follows:
ORDER
THIS CAUSE came on for hearing on June 14, 1985 on Defendant's Motion to Suppress all evidence obtained as the result of the initial stop and eventual arrest of the Defendant.
The Defendant was operating a motor vehicle in a lawful manner on an Orlando street when first observed by Officer David Grant of the Orlando Police Department. As the officer approached Defendant's vehicle in an opposing traffic lane and passed by it, the officer noted that one or more occupants of Defendant's vehicle appeared to stare or "gawk" at him. He also noted that the vehicle slowed and that it had a tag indicating that the vehicle was leased in Dade County. The officer turned his vehicle around with the intent to follow it. The officer testified that at that point he did not intend to stop the vehicle. He next observed the vehicle stopped in the driveway of Sister Reeds Bar near a side door with the front passenger no longer in the car. The officer then exited his car, approached the Defendant and asked for his driver's license. When a teletype indication was received that the license *1313 was suspended the Defendant was placed under arrest and a search of the passenger compartment of the vehicle revealed the existence of contraband.
The Defendant maintains that the observations made by the officer did not give rise to sufficient reasonable cause to stop the Defendant and that the Defendant was not free to leave when the officer demanded the license. The State argued that the combination of factors the officer observed gave rise to a reasonable belief that the Defendant was engaging in criminal activity. Alternatively, the state argued that the mere approach by the officer and request for identification did not constitute a "stop" as contemplated by Florida's stop and frisk law (F.S. 901.151) nor under the case law evolving from Terry v. Ohio, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889].
The Court having considered the evidence and argument finds that the combination of factors which alerted the officer did not give rise to sufficient cause to stop the Defendant. Although the instincts of the officer are to be commended in light of the resulting evidence, persons have the right to be free from state intrusions into their daily lives and activities absent more compelling reasons for suspicion.
The issue concerning precisely what constitutes a "stop" and at what point it occurs has been [the] subject of numerous published opinions. The state has relied upon Lightbourne v. State, 438 So.2d 380 (Fl.Sup.Ct. 1983). In that case the police officer approached the occupant of a parked vehicle and asked his reason for his presence in the area, his current address and then ran a routine check on his identification and car registration. The Court there held that this activity did not amount to a seizure and was merely a permissible encounter which intruded on no constitutionally protected interest. The Lightbourne case may be distinguished in two important respects. First, the officer in that case approached the car in response to a call by a citizen regarding its suspicious presence and activities. The officer there was responding to a call rather than reacting to a hunch. Second, that officer approached a parked car and inquired generally about its occupant's presence in the area. In the instant case the officer approached the driver of a vehicle which had the engine running and demanded his license. In the first instance a citizen may reasonably believe he was permitted to continue on his way without responding if he chose to do so. This is not so in the instant case.
Accordingly, the Defendant's Motion to Suppress is Granted.

The trial court's order is based, in large measure, upon its analysis of the Florida Supreme Court case of Lightbourne v. State, 438 So.2d 380 (Fla. 1983). In Lightbourne the court, relying on language from Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), distinguished between a Terry stop (a "limited seizure") based upon a well-founded suspicion of past or prospective criminal activity, and a mere encounter between police and a citizen which intrudes upon no constitutionally protected interest. In finding no initial seizure of the person, the court relied upon the fact that the officers who first approached Lightbourne's automobile were responding to a call and not acting on their own "hunch," as in the "roving patrol" cases. Moreover, the investigating officer (McGowan) "simply approached the parked car, asked defendant a few simple questions as to the reason for his presence there, his current address, and then ran a routine check on defendant's car and identification." The opinion indicates that the defendant "voluntarily relinquished" his driver's license to Officer McGowan  i.e., such was not demanded by McGowan. At that point in time, furtive movements and the nervous appearance of the defendant apparently elevated the encounter to a valid Terry detention justifying a frisk for weapons.
Based upon the Lightbourne analysis, the trial court in the instant case determined that there was not a "consensual encounter." See Florida v. Royer, 460 U.S. 491, 506, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983); United States v. Mendenhall, *1314 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). We agree with the finding by the trial court that this was a "stop" and a "limited seizure" under Terry.[1] The issue, then, is whether there was a reasonable (well-founded) suspicion on the part of Officer Grant that criminal activity was afoot at the time he approached King. The trial judge apparently accepted the "combination of factors" enumerated by Officer Grant  i.e., we are not dealing with credibility  and found them to fall short of reasonable suspicion. Those factors were:
1. The three occupants of the suspect vehicle "gawked" at the officer and turned their heads and looked at him as he passed.
2. The suspect vehicle was traveling very slowly and came to a stop as the officer's vehicle passed.
3. The suspect vehicle had a Dade County "Z" (rental) tag, possibly suggesting a vehicle engaged in drug activity. The officer explained that rental cars are often used in drug deals to avoid the risk of forfeiture.
4. The suspect vehicle stopped and parked at a bar known for drug dealing and prostitution.
5. The suspect vehicle was backed up to the rear door of the building, with the engine running, not in a normal parking space, and in a manner which would provide a quick exit,
6. One of the passengers of the vehicle had gone inside the bar while the others waited for him in the car.
We disagree with the trial court, and conclude from the established facts that the circumstances here reasonably indicated that the occupants of the suspect vehicle were committing, or about to commit, a criminal offense, towit: the buying or selling of drugs. Therefore, the temporary detention and ascertainment of the identity of the driver were justified. This led to the valid arrest of King for driving with a suspended license. That arrest justified the search of the passenger compartment of the automobile. See New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
REVERSED.
ORFINGER and COWART, JJ., concur.
NOTES
[1] The Terry rule has been incorporated as section 901.151, Florida Statutes (1983), which provides, in pertinent part:

(1) This section may be known and cited as the "Florida Stop and Frisk Law."
(2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.
(3) No person shall be temporarily detained under the provisions of subsection (2) longer than is reasonably necessary to effect the purposes of that subsection. Such temporary detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof.
(4) If at any time after the onset of the temporary detention authorized by subsection (2), probable cause for arrest of person shall appear, the person shall be arrested. If, after an inquiry into the circumstances which prompted the temporary detention, no probable cause for the arrest of the person shall appear, he shall be released.