894 So.2d 115 (2005)
STATE of Florida, Petitioner,
v.
Robert BAEZ, Respondent.
No. SC02-1173.
Supreme Court of Florida.
November 10, 2004.
Rehearing Denied January 5, 2005.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Celia A. Terenzio and Melynda L. Melear, Assistant Attorney Generals, West Palm Beach, FL, for Petitioner.
Carol Haughwout, Public Defender and Gary Lee Caldwell, Assistant Public Defender, Fifteen Judicial Circuit, West Palm Beach, FL, for Respondent.
PER CURIAM.
We have for review Baez v. State, 814 So.2d 1149 (Fla. 4th DCA 2002), which expressly and directly conflicts with the decision in Lightbourne v. State, 438 So.2d 380 (Fla.1983). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
The following facts were accepted by the trial court as an accurate representation of the events, as the court found the police officer's testimony to be credible. There was a notification made to the police and Broward Emergency Medical Services of a vehicle parked at night in a normally abandoned warehouse area in the city of Weston, Broward County. The officer, upon arriving to the dimly lit warehouse area between 8:30 and 9 p.m., used his flashlight to look inside the vehicle to see Baez, who was "slumped" over the wheel of a parked white van. The officer then knocked on the passenger-side window with his flashlight. He was concerned about Baez, who appeared asleep or in *116 need of medical attention. Baez immediately awoke, and the officer asked him through the car window if he was alright. Baez, not able to hear the officer's question, opened the door and got out of his car. The officer did not request or demand that Baez step out of the vehicle. Once Baez was outside of the vehicle, the officer repeated his inquiry into Baez's condition, and Baez responded that he was alright and had just fallen asleep. The officer then requested to see some "identification." Baez produced his driver's license, which the officer looked at and then went to his police car to run a computer warrant check. The computer check revealed an outstanding warrant for Baez's arrest from New Jersey, and Baez was arrested. After being placed in the arresting officer's police car, Baez was later transferred into another police car. The arresting officer found two small plastic bags containing cocaine in the officer's car where Baez had been seated.
Baez was charged with possession of cocaine, and he moved for suppression of the evidence, arguing that once the officer retained his license, after identifying him, he was unlawfully detained while the officer ran the warrants check. The trial court denied the motion to suppress, finding that the defendant consented to the search in a consensual encounter, and Baez was convicted by a jury for possession of cocaine and sentenced to five and a half months in jail. The Fourth District Court of Appeal reversed, finding that after the officer had inspected appellant's driver's license the consensual encounter had ended and that Baez was detained in violation of his Fourth Amendment rights while the officer was holding his identification. Baez v. State, 814 So.2d at 1151. We quash the Fourth District's decision and hold that Baez was not unreasonably detained while the officer ran a warrants check on Baez's driver's license.
This case is similar to and should follow Lightbourne v. State, 438 So.2d 380 (Fla.1983). In Lightbourne, this Court found that the request for and subsequent warrant check of the defendant's driver's license was not a violation of the Fourth Amendment. In Lightbourne, the officer responded "for the purpose of investigating the citizen's call regarding a suspicious vehicle." Id. at 389. The defendant in Lightbourne sat awake in his parked car, while Baez was asleep behind the wheel. Id. at 388. In both instances, the officer asked for identification and the citizen voluntarily handed over a driver's license. Baez left his car on his own volition, while Lightbourne remained inside the parked car. In each case, the officer inspected the license and then brought the license to the police car to run a warrant check. Id. at 387. We found in Lightbourne, under circumstances there existing, that an officer could ask for identification and take the identification to the police car to run a routine warrant check on the information without there being an unconstitutional stop or seizure. This Court held in Lightbourne:
Officer McGowan's investigation of the suspicious vehicle in this case does not rise to the level of an unconstitutional stop or seizure. Officer McGowan simply approached the parked car, asked defendant a few simple questions as to the reason for his presence there, his current address, and then ran a routine check on defendant's car and identification. Surely the average, reasonable person, under similar circumstances, would not find the officer's actions unduly harsh. There is nothing in the record that would indicate that prior to defendant voluntarily relinquishing his driver's license to Officer McGowan he was not free to express an alternative wish to go on his way. The Court need not *117 consider here the question of what would happen if a citizen, asked for identification under somewhat similar conditions, and who upon declining to surrender such identification, was placed under arrest. The implication is that in reality, rather than theory, one who has been so confronted by an officer is not free to leave.
. . . .
In the case sub judice we find no "stop" or "seizure" of the defendant within the meaning of Terry and its progeny occurred prior to his removal from the car by Officer McGowan to conduct the pat-down search. Officer McGowan was simply performing his duty as a police officer to investigate a citizen complaint, motivated by a concern that the defendant might be in need of assistance. Once on the scene, the officer acted prudently for the protection of the safety of the concerned citizen and his neighbors in the community when he proceeded to check out the defendant's car and identification.
Id. at 387-88.
We note that this case is also not controlled by our recent decision in State v. Diaz, 850 So.2d 435 (Fla.2003). The facts presented in Diaz were:
A Hillsborough County Deputy Sheriff observed a vehicle driven by Diaz pass by with a temporary tag on the top of the rear window. Because he could not read the tag, the deputy initiated a traffic stop. At the suppression hearing, the deputy testified that as he approached the car he could clearly read the tag including the expiration date and found nothing improper. He walked up to the driver's side of the car and obtained information from Diaz, the driver, which ultimately led to the charge against Diaz of felony driving with a suspended license.
Id. at 436 (quoting Diaz v. State, 800 So.2d 326, 326-27 (Fla. 2d DCA 2001)). There, we held that based upon the totality of the facts presented, "the law enforcement officer ... had no justification for continuing the restraint of [the] motorist and obtaining information from him after it was clearly determined that no question remained concerning a violation of law or the validity of the car's temporary license plate." Id.
As stated in Diaz, the totality of the circumstances controls in cases involving the Fourth Amendment. See State v. Butler, 655 So.2d 1123, 1125 (Fla.1995). Here, the issue was not whether the reason for the stop had been eliminated by facts which developed after the stop had been made. Rather, the police officer was given the driver's license in a consensual encounter. The question was whether the police officer could then retain what he was consensually given long enough to do the computer check. The totality of the circumstances presented demonstrates that unlike in Diaz, the officer did have a reasonable basis and reasonable suspicion to investigate Baez further. Baez was found in a suspicious condition  slumped over the wheel of his van  in a location in which he should not normally have been  a dimly lit warehouse area at night. Baez voluntarily exited his vehicle, and when asked for identification, gave his driver's license to the officer. The officer had sufficient cause to further investigate by doing a computer check based on Baez's suspicious behavior. It was not unreasonable for the officer to proceed with the computer check when he had not yet eliminated reasonable concern and justified articulable suspicion of criminal conduct. Unlike in Diaz, the officer here had not eliminated all criminal suspicion.
Thus, for the reasons expressed herein, we quash the Fourth District's decision *118 and remand for proceedings consistent with this decision.
It is so ordered.
WELLS, LEWIS, and CANTERO, JJ., concur.
WELLS, J., concurs with an opinion.
BELL, J., concurs in result only with an opinion.
QUINCE, J., concurs in result only.
PARIENTE, C.J., dissents with an opinion, in which ANSTEAD, J., concurs.
WELLS, J., concurring.
I concur with the majority decision. I do so for the following reasons.
Under the facts of this case, as testified to by the law enforcement officer and found by the trial judge to be credible,[1] the law enforcement officer received a call to assist Broward County Emergency Medical Services with a suspicious incident where a subject might be passed out behind the wheel of a vehicle. The law enforcement officer responded to the area, which was a normally unoccupied warehouse area. It was between 8:30 and 9 p.m., and the area had very limited lighting. When the law enforcement officer arrived on the scene, he observed the van, and inside the van he saw a person sitting behind the wheel. According to the law enforcement officer, this person was slumped over the wheel and it appeared that the person was either asleep or something was wrong with the person. The officer knocked on the window of the person's (Baez's) vehicle, at which time Baez sat up. The law enforcement officer, who was in full uniform, then identified himself as a deputy sheriff. The law enforcement officer asked Baez if he was okay. Baez appeared not to hear what the law enforcement officer said so Baez stepped out of his vehicle and talked to the officer. The law enforcement officer asked Baez if everything was okay. Baez replied, "Yeah, I'm sleeping." According to standard procedure, the law enforcement officer then asked Baez for identification. Baez gave the law enforcement officer a driver's license, and the officer called in the license number for a computer check. No issue is made as to the length of time it took for the check. This computer check revealed an outstanding warrant for Baez.
Unlike Chief Justice Pariente, I agree with the majority that the decision in this case should follow the very similar case decided by this Court in Lightbourne v. State, 438 So.2d 380 (Fla.1983). Like Baez, Lightbourne was in a suspicious car called to the attention of a law enforcement officer by a concerned citizen. As the Court states in Lightbourne:
Officer McGowan's investigation of the suspicious vehicle in this case does not rise to the level of an unconstitutional stop or seizure. Officer McGowan simply approached the parked car, asked defendant a few simple questions as to the reason for his presence there, his current address, and then ran a routine check on defendant's car and identification.
Id. at 387. It seems to me that this Court's analysis in Lightbourne meets not only constitutional muster but simple common sense.
I do not agree with Chief Justice Pariente that this case is controlled by Popple v. State, 626 So.2d 185 (Fla.1993). The significant fact in Popple was that the law enforcement officer ordered Popple to exit *119 his car. In Popple, this Court specifically said:
Whether characterized as a request or an order, we conclude that Deputy Wilmoths's direction for Popple to exit his vehicle constituted a show of authority which restrained Popple's freedom of movement because a reasonable person under the circumstances would believe that he should comply.
Id. at 188. That did not happen in this case. Baez voluntarily got out of his car. In fact, the district court held in this case that this was a consensual encounter.
I find in the circumstances of this case that it should not be held as a matter of law that Baez giving his driver's license to the law enforcement officer in response to the officer's request for identification and the officer doing a routine computer check converted the contact between the officer and Baez into a nonconsensual encounter. The record facts indicate that Baez never requested his license back or made any attempt to leave during the routine computer check. A total circumstances evaluation of this case assumes that Baez is a reasonable citizen who could simply have said to the officer, "I have got to go. Give me back my license." Baez did not do that, and thus we should not speculate on what would have happened if he had done so. It is important to note here that there is no contention by Baez that this computer check took an unreasonably long time to complete.
The statement that this Court made about this same issue in Lightbourne is applicable here:
The Court need not consider here the question of what would happen if a citizen, asked for identification under somewhat similar conditions, and who upon declining to surrender such identification, was placed under arrest.
Lightbourne, 438 So.2d at 388.
What can be reasonably concluded in this case is that this law enforcement officer followed routine police procedure. After Baez voluntarily exited his car, the law enforcement officer asked for identification. Baez gave the officer his driver's license. Certainly, the officer could do the computer check of the information Baez gave the officer. Unless Baez raised some objection or the check took an unreasonable length of time, which did not happen, there was nothing which converted this consensual encounter and routine law enforcement procedure into a seizure.[2]
The recent decision of the United States Supreme Court in Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County, 542 U.S. 177, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004), bolsters my view that under the circumstances of this case, the retaining of Baez's driver's license for the brief period of time it took to perform the computer check was not in violation of the Fourth Amendment. Hiibel is different from this case in that it was a Terry stop case,[3] and the issue in the case was Nevada's stop and identify statute.[4] However, in Hiibel the Court does reiterate what I conclude is the point in this case:
In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment. "[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." INS v. *120 Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).
Hiibel, 124 S.Ct. at 2458.
Certainly, under the circumstances of the present case, in which Baez consensually gave his identification to the law enforcement officer, the officer could perform a computer check of Baez's license.
BELL, J., concurring in result only.
I agree with Justice Wells' concurring opinion in all aspects, except that I concur in result only with the majority opinion.
PARIENTE, C.J., dissenting.
I respectfully dissent. In quashing the Fourth District's decision and determining that the officer was justified in retaining Baez's driver's license for a warrants check, the majority decides the case on grounds not argued either here or in the Fourth District Court of Appeal. And the conflict issue  whether an individual is detained when an officer retains his driver's license to conduct a warrants check  is never decided by the majority.[5]
The majority's holding that the officer had "sufficient cause to further investigate" appears to create a category of police-citizen contact that is neither fish nor fowl  neither wholly a consensual encounter nor a detention supported by a reasonable suspicion of criminal activity. By failing to even discuss our landmark case of Popple v. State, 626 So.2d 185 (Fla.1993), in determining the category of police-citizen encounter that occurred in this case, the majority brings confusion to an area in which clarity is needed.

GIVING THE "TIPSY COACHMAN" FREE REIN
The Fourth District described the issue in this case as being whether, "after an officer looked at appellant's license during a consensual encounter, the encounter became non-consensual when the officer retained the license and called in to check for outstanding arrest warrants." Baez v. State, 814 So.2d 1149, 1150 (Fla. 4th DCA 2002). The Fourth District determined that because a reasonable person would not have felt free to leave at that point, Baez was detained. See id. The Fourth District also stated in passing that the detention was "without founded suspicion." Id. at 1151.
The State has never contended that there was founded suspicion for a detention. Instead, the State has argued that no detention occurred because the officer "did not act in any way to make a reasonable person believe that he could not end the encounter at any time."[6]
The majority does not directly address the issue decided below and argued by the State. Instead, the Court concludes that the officer had "a reasonable basis and reasonable suspicion to investigate Baez further" by retaining his license to run a computer check. This terminology is difficult to square with our prior precedent, and appears to split the difference between *121 consensual encounters and investigatory detentions. However, because there is no need for reasonable suspicion justifying further investigation in a consensual encounter, I infer that the Court is stating that the encounter did not remain wholly consensual when the officer retained the license. See Morrow v. State, 848 So.2d 1290, 1292 (Fla. 2d DCA 2003) ("A reasonable suspicion of criminal activity is not necessary if the contact is merely a consensual encounter.") (citing Popple, 626 So.2d at 186). Therefore, evidently the Court is holding that Baez was validly detained based on reasonable suspicion of criminal activity.[7]
I believe the Court errs in quashing the Fourth District decision on this basis. Under the "tipsy coachman" rule, an appellate court may affirm a lower court ruling for any reason supported by the record, see Robertson v. State, 829 So.2d 901, 907 (Fla.2002), but I can find no authority for using the rule to quash or reverse a lower court decision on a theory not argued by the party challenging the ruling in the reviewing court. Cf. Jenkins v. State, 747 So.2d 997, 999 (Fla. 5th DCA 1999) (declining to reverse trial court on issue not raised on appeal). The flawed decision reached in this manner illustrates the inadvisability of innovating grounds for quashing a lower court decision. I explain my specific concerns below.

LIGHTBOURNE, POPPLE, AND REASONABLE SUSPICION
The majority concludes that this case is controlled by Lightbourne v. State, 438 So.2d 380 (Fla.1983). I disagree. This Court in Lightbourne did not decide whether an officer's act of retaining a driver's license to run a warrants check constitutes a Fourth Amendment seizure that must be supported by a reasonable suspicion of criminal activity. Instead, the Court determined that a permissive encounter did not become a detention when the defendant "voluntarily relinquish[ed] his driver's license." Id. at 388. The issue here, in contrast, is whether the encounter became a detention when the officer retained the license after examining it, not when Baez relinquished it.
Further, in Lightbourne we declined to address whether a person asked by an officer for his driver's license "in reality, rather than theory, ... is not free to leave." Id. at 388. The Court focused only on whether the officer "acted prudently" without assessing the nature of the police-citizen encounter. Subsequently, in Popple, the Court set out the levels of police-citizen interactions and the degree of suspicion of criminal activity needed at each level. Significantly, Popple placed the issue of when an individual is detained squarely before us via conflict of decisions on the issue in the district courts, rather than as one of numerous issues raised in a capital case as in Lightbourne. Connecting United States Supreme Court precedent and Florida's "stop and frisk" law, we stated:
There are essentially three levels of police-citizen encounters. The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked. United States v. Mendenhall, *122 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
The second level of police-citizen encounters involves an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. § 901.151, Fla. Stat. (1991). In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop. Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984).
While not involved in the instant case, the third level of police-citizen encounters involves an arrest which must be supported by probable cause that a crime has been or is being committed. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); § 901.15 Fla.Stat. (1991).
Popple, 626 So.2d at 186. This Court articulated the standard for distinguishing detentions from mere police-citizen encounters:
Although there is no litmus-paper test for distinguishing a consensual encounter from a seizure, a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries, and the person may not be detained without a well-founded and articulable suspicion of criminal activity. This Court has consistently held that a person is seized if, under the circumstances, a reasonable person would conclude that he or she is not free to end the encounter and depart.

Id. at 187-88 (citation omitted) (emphasis supplied). The Court stated that whether characterized as a request or an order, an officer's direction to an individual can constitute a show of authority that a reasonable person would not feel free to refuse. See id. at 187. The Court further held that an officer's observation of the defendant sitting in a legally parked car making furtive movements at 12:55 p.m. did not create reasonable suspicion to justify a detention that was initiated by the officer telling Popple to exit his vehicle. See id. at 186-88.
The majority in this case does not mention Popple. In his concurring opinion, Justice Wells discusses Popple only to distinguish its facts. He correctly points out that Baez exited his car without being asked. I agree with the Fourth District that Baez was not detained at that point. Rather, Baez was detained for Fourth Amendment purposes when, after he complied with the officer's request to produce identification, the officer took his license to his patrol car and used it to conduct the warrants check. See Baez, 814 So.2d at 1153.
In a Fourth District decision following Baez, which he authored, Judge Klein elaborated on his reasoning as to why a police officer's retention of a driver's license turns a consensual encounter into a detention for Fourth Amendment purposes:
I, for one, despite my law school education, had no idea there was such a thing as a consensual encounter until I became a judge. Because police officers are, in our society, charged with maintaining order and enforcing the law, it would never have occurred to me that I could insist on the return of my license before the officer was finished with it. Nor would it occur to any other person unversed in search and seizure law.
*123 As Professor LaFave has written, "[i]t is nothing more than fiction to say that all of these subjects have consented to the confrontation." Wayne R. LaFave, Search and Seizure  A Treatise on the Fourth Amendment, § 9.3(a), at 95-96 (3d ed.1996).
In addition to the cases we relied on in Baez, appellant has cited several recent cases from other states in which the courts have refused to go along with this charade. Salt Lake City v. Ray, 998 P.2d 274 (Utah Ct.App.2000); Piggott v. Commonwealth, 34 Va.App. 45, 537 S.E.2d 618 (2000). As the court observed in State v. Daniel, 12 S.W.3d 420, 427 (Tenn.2000):
Without his identification, Daniel was effectively immobilized. Abandoning one's identification is simply not a practical or realistic option for a reasonable person in modern society. [Florida v.] Royer, 460 U.S. [491] at 501-02, 103 S.Ct. [1319] at 1326 [75 L.Ed.2d 229 (1983)]; United States v. Jordan, 294 U.S.App. D.C. 227, 958 F.2d 1085, 1087 (D.C.Cir.1992). Contary to the State's assertion, when an officer retains a person's identification for the purpose of running a computer check for outstanding warrants, no reasonable person would believe that he or she could simply terminate the encounter by asking the officer to return the identification.
Perko v. State, 874 So.2d 666, 667 (Fla. 4th DCA 2004) (Klein, J., concurring specially).
Although Justice Wells suggests that Baez made the wholly voluntary choice to remain because he never asked for his license back or attempted to leave, this is as much an indication of continued acquiescence to the officer's show of authority in obtaining the license as an indication that the defendant felt free to leave. Cf. Popple, 626 So.2d at 188 (stating that "direction for [defendant] to exit his vehicle constituted a show of authority which restrained [the defendant's] freedom of movement because a reasonable person under the circumstances would believe that he should comply").
Further, it is unrealistic to conclude that Baez might have walked or driven away without his license while the warrants check was ongoing. Operating a motor vehicle without having a driver's license in one's "immediate possession" is a traffic infraction under section 322.15, Florida Statutes (2003). Thus, under all the circumstances of this case, Baez was detained under the criteria set forth in Popple.

DISTRICT COURT PRECEDENT
Assuming that the majority is actually stating that there was a detention resting on a reasonable suspicion of criminal activity, its holding departs not only from Popple but also from well-established district court precedent that largely relies on Popple. In Parsons v. State, 825 So.2d 406 (Fla. 2d DCA 2002), the officer observed the defendant passed out in a parked car at 1:40 a.m. with binoculars in his lap. See id. at 408. The parked vehicle was located in a small parking lot adjacent to a temporary employment agency and across the street from a motel frequented by prostitutes. The area in which the defendant was parked was allegedly a high-crime area. See id. The officer awoke the defendant, who appeared nervous and began sweating and shaking. A subsequent license check revealed that the defendant was a convicted sex offender. See id. Although the deputy testified that he thought Parsons might be intoxicated upon first approaching him, by the time he performed the license check nothing suggested that the deputy still believed Parsons might be intoxicated. See id. at 409. In an opinion authored by Judge Altenbernd, *124 the Second District held that although the information possessed by the deputy might have been sufficient for him to make Parsons exit his automobile, there was no reasonable suspicion to justify the detention, as neither the officer nor the State could "articulate a crime connected to these facts that would support a Terry stop." Id.
In Baker v. State, 754 So.2d 154, 154 (Fla. 5th DCA 2000), the officer observed the defendant in a van near a closed business at 3 a.m. When the defendant saw the officer, he "got out of the van, lifted the hood, tinkered with the engine, got back into the van, started the engine and, with a thumbs up sign to the officer, pulled away from the curb." Id. In an opinion authored by Judge Harris, the Fifth District held that the fact that the defendant was parked late at night near a closed business did not establish grounds for a Terry stop. Id. The Fifth District reasoned:
The officer had no reasonable grounds for suspicion that the closed business had been or was about to be burgled. Even the additional fact that another person, who so far as the officer knew was unconnected with Baker, was walking near the closed business does not help. Baker's effort to leave the area after the adjustment, or feigned adjustment, of his battery was nothing more than walking away from the officer.
Id. at 154-55.
Finally in State v. Taylor, 826 So.2d 399 (Fla. 3d DCA 2002), the officer approached a vehicle legally parked at 4:30 a.m. in an "affluent, predominantly white area of northern Miami-Dade County." Id. at 400. After passing the vehicle a second time, he noticed a man inside the vehicle. The officer approached the vehicle, asked the man to exit, and inquired why he was in the area. The man responded that he used to live in the area. The officer also observed that although the defendant was cooperative, he appeared nervous. She then asked for identification. The defendant produced a valid Florida driver's license, which the officer took to her car to run a check. In examining whether the totality of the circumstances justified the stop, the Third District held, in an opinion written by Judge Shevin:
This case is controlled by the holding in Popple. It is well-settled that merely observing an individual in a legally parked car is insufficient to raise a well-founded suspicion of criminal activity sufficient to support a stop. Popple held that a legally parked car, even one in a desolate area, does not create reasonable suspicion to justify a detention. In Popple, the police only observed the defendant sitting in a legally parked car making furtive movements at 12:55 p.m. prior to the detention. The supreme court found that Popple's suppression motion should have been granted. Under that holding, Taylor's suppression motion was properly granted.
This case is virtually indistinguishable from Miranda v. State, 816 So.2d 132 (Fla. 4th DCA 2002), Alvarez v. State, 695 So.2d 1263 (Fla. 2d DCA 1997), and the cases cited therein. In Miranda, the arresting officer observed a legally parked car in the back of an apartment complex parking lot at 5:00 a.m. in an area of prior criminal activity. The court held that this observation was insufficient to create reasonable suspicion that a crime had, or was about, to occur, and reversed the denial of a suppression motion. Here, Malone observed nothing more than the officer in Miranda.

In Alvarez, police observed the defendant seated in a legally parked car adjacent to an apartment complex at 4:00 a.m. The officers asked the defendant to exit his car based on their general suspicion *125 that he might be committing a crime. There had been no reports of burglaries, thefts, or other criminal activity in the area that evening. In reversing the denial of Alvarez's suppression motion, the court concluded that the officers did not have reasonable suspicion to believe the defendant was committing a crime. The Alvarez scenario mirrors the events leading to Taylor's detention.
Id. at 403-04 (footnote omitted). The Third District also cited to numerous additional cases, including Parsons and Baker, holding that observation of an individual in a legally parked car does not justify a detention. See id. at 403 n. 6.

THIS CASE
Under the precedent cited above, it is clear that when the police officer retained Baez's license, the level-one consensual encounter became a level-two investigatory detention that was not supported by a reasonable suspicion of any criminal activity. Indeed, even the reason for the consensual encounter, that the defendant may have been experiencing health problems, dissipated when Baez exited the vehicle and told the officer he was fine.[8] Certainly, if the officer was concerned only for the defendant's safety or health, asking for identification and then running a warrants check did nothing to assist the defendant. In addition, this type of police-citizen encounter differs from situations in which police officers are authorized to determine the validity of the license of a driver who has been detained for a traffic infraction. See Delaware v. Prouse, 440 U.S. 648, 658, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Before learning of the warrant, the officer had no reason to believe that Baez had committed an infraction or a crime.
Because Baez complied with the officer's request to produce his license, the issue of whether the State may punish as criminal conduct the refusal of a lawfully detained person to identify himself is not before this Court. The United States Supreme Court recently answered this question in the affirmative. See Hiibel v. Sixth Judicial Dist. Court of Nev., ___ U.S. ___, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). The Court in Hiibel did not address the circumstances under which an officer's act of retaining a license to run a warrants check could be held to convert a consensual encounter into an investigatory detention. In fact, the statute upheld in Hiibel requires only that the individual state his name, see id. at 2457, not that he provide documentation of his identity, as was requested of Baez.

CONCLUSION
Because the officer lacked a well-founded, articulable suspicion of criminal activity at the point when he returned to his patrol car to run a warrants check on the driver's license, and because a reasonable person in Baez's position would conclude that he or she was not free to end the encounter and depart when the officer retained his license for a warrants check, suppression of the evidence seized pursuant to the resulting arrest was required. I therefore dissent from the majority's decision to the contrary in this case.
Finally, because the majority diverges from our Fourth Amendment precedent, *126 including Popple, I view the Court's decision as an aberration from our Fourth Amendment jurisprudence. The majority's conclusion that the officer had a "reasonable basis and reasonable suspicion to investigate Baez further" should be confined to the unique facts of this case.
ANSTEAD, J., concurs.
NOTES
[1] See Connor v. State, 803 So.2d 598, 608 (Fla.2001) (Court accords presumption of correctness to trial court's finding of historical fact).
[2] I agree with the analysis of the Fifth District in Golphin v. State, 838 So.2d 705 (Fla. 5th DCA 2003).
[3] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[4] Nev.Rev.Stat. 171.123(1), (3) (2003).
[5] Pending before this Court are two other cases presenting the issue of whether retaining a driver's license or identification to conduct a warrants check constitutes a detention for Fourth Amendment purposes. See Golphin v. State, 838 So.2d 705, 706 (Fla. 5th DCA 2003) (declaring conflict with Baez), review granted, No. SC03-554, 888 So.2d 17 (Fla. Nov. 5, 2004); Perko v. State, 874 So.2d 666, 667 (Fla. 4th DCA 2004) (noting conflict with Golphin), review granted, No. SC04-1324, 888 So.2d 18 (Fla. Nov.5, 2004).
[6] At oral argument, the Assistant Attorney General informed us that "the State has said from the onset and continues to say that this is purely a consensual encounter." In the reply brief filed in this Court, the State represented that it "agrees that in this case there was no ground for detention."
[7] Justice Wells, on the other hand, appears to lean more toward characterizing this as a consensual encounter which was not rendered coercive by the officer retaining the license to conduct a warrants check. I address his position below.
[8] There is precedent for an emergency-health exception to the Fourth Amendment warrant requirement and the Fifth Amendment requirement of warnings under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See Benson v. State, 698 So.2d 333 (Fla. 4th DCA 1997); State v. Hetzko, 283 So.2d 49 (Fla. 4th DCA 1973). Because any health concern had dissipated when the officer retained Baez's license for a warrants check, the issue of whether the detention was justified by health concerns is not before us.