814 So.2d 1149 (2002)
Robert BAEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-100.
District Court of Appeal of Florida, Fourth District.
April 10, 2002.
Rehearing Denied May 14, 2002.
*1150 Carey Haughwout, Public Defender, and Michael Antinori and Margaret Good-Earnest, Assistant Public Defenders, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, J.
The issue in this case is whether, after an officer looked at appellant's license during a consensual encounter, the encounter became non-consensual when the officer retained the license and called in to check for outstanding arrest warrants. We agree with appellant that a reasonable person would not have felt free to leave and that his motion to suppress should have been granted. See Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).
Around 8:30 p.m., an officer was dispatched to an industrial area to investigate a person who appeared to be asleep in the front seat of a van. When the officer arrived at the parking area, which was open to the public, he observed appellant asleep and tapped on the window.
After appellant sat up, the officer then asked to see identification. Appellant, on his own, got out of the van and gave the officer his driver's license. The officer testified that he had no reason to believe appellant had committed a crime and that this was at all times a "consensual conversation." The officer then called in to have a computer check run, which revealed that there was an outstanding out-of-state warrant for appellant's arrest.
The officer then handcuffed appellant and placed him in the back of the officer's vehicle. After backup arrived, the officer placed appellant in a different vehicle, searched the back of the vehicle in which appellant had been sitting, and found two small plastic baggies containing cocaine.
Appellant testified that he had been up since 4:00 a.m. and that he had gone to pick up his children after work that evening. Because they were not home yet, he *1151 had picked up take-out food and eaten it in the parking lot. He was taking a nap while waiting to be called on his cell phone to pick them up.
Appellant argues that the trial court should have granted his motion to suppress because, once the officer retained his license after ascertaining his identification, no reasonable person would have felt free to leave while the officer retained the license and ran a warrant check. Our application of the law to the facts in this case, which are undisputed, is de novo. State v. Manuel, 796 So.2d 602 (Fla. 4th DCA 2001).
An officer may approach a vehicle under these circumstances, without founded suspicion, and ask the driver to identify himself. Popple v. State, 626 So.2d 185 (Fla.1993). He may also ask to see the driver's license. Hines v. State, 737 So.2d 1182 (Fla. 1st DCA 1999); State v. Barnett, 572 So.2d 1033 (Fla. 2d DCA 1991).
In Barna v. State, 636 So.2d 571 (Fla. 4th DCA 1994), the defendant had been standing in a parking lot behind a bar at night. Officers approached and told him that there had been drug activity and other crime in the parking lot and that they were going to "investigate a little further." They asked defendant for his identification and held it while running a teletype check. While the officer was holding his ID, the defendant agreed to be searched, and the officer found drug paraphernalia.
The trial court denied the motion to suppress on the ground that, even though there was no lawful investigatory stop, the defendant consented to the search during a consensual encounter. We reversed, concluding that no reasonable person would have believed he was free to leave while the officer was holding his ID. See United States v. Jefferson, 906 F.2d 346 (8th Cir.1990)(the retention of papers may transform an interview into a seizure where it is accompanied by some other act, compounding an impression of restraint); U.S. v. Thompson, 712 F.2d 1356 (11th Cir.1983)(an officer's retention of a citizen's identification is sufficient to convert an encounter into a stop).
As the court explained in United States v. Jordan, 958 F.2d 1085, 1087 (D.C.Cir.1992):
"once the identification is handed over to police and they have had a reasonable opportunity to review it, if the identification is not returned to the detainee [it is] difficult to imagine that any reasonable person would feel free to leave without it." United States v. Battista, 876 F.2d 201, 205 (D.C.Cir.1989).
The state relies on O.A. v. State, 754 So.2d 717 (Fla. 4th DCA 1998); however, O.A. is distinguishable in that the officer was not holding any identification of the defendant. He was merely calling in the name the defendant had given him to have it run through the computer. The state also argues that in Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), the Supreme Court held that an encounter was consensual even though the police had asked the defendant to see his identification and his bus ticket. In Bostick, however, the officer returned the items to the defendant immediately after examining them.
The state also cites Lightbourne v. State, 438 So.2d 380 (Fla.1983), a death penalty case. On first blush, Lightbourne appears to support the state's position because the court stated:
Officer McGowan's investigation of the suspicious vehicle in this case does not rise to the level of an unconstitutional stop or seizure. Officer McGowan simply approached the parked car, asked defendant a few simple questions as to *1152 the reason for his presence there, his current address, and then ran a routine check on defendant's car and identification.
Id. at 387. The Lightbourne opinion goes on, however, as follows:
There is nothing in the record that would indicate that prior to defendant voluntarily relinquishing his driver's license to Officer McGowan he was not free to express an alternative wish to go on his way. The Court need not consider here the question of what would happen if a citizen, asked for identification under somewhat similar conditions, and who upon declining to surrender such identification, was placed under arrest. The implication is that in reality, rather than theory, one who has been so confronted by an officer is not free to leave.
* * *
Officer McGowan was simply performing his duty as a police officer to investigate a citizen complaint, motivated by a concern that the defendant might be in need of assistance. Once on the scene, the officer acted prudently for the protection of the safety of the concerned citizen and his neighbors in the community when he proceeded to check out the defendant's car and identification.
Given the fact that the initial contact was justified, the ultimate pat-down was also justified in that defendant's furtive movements and nervous appearance when observed by Officer McGowan formulated a reasonable ground to believe that the defendant was armed and potentially dangerous.
Id. at 388.
Unlike the factual situation in Lightbourne, the officer in the present case was not responding to a tip of suspicious activity. Nor was he concerned for the protection of anyone after he looked at appellant's identification. We thus find Lightbourne distinguishable.
State v. Chang, 668 So.2d 207 (Fla. 1st DCA 1996), contains dicta which would be contrary to our holding; however, it is factually distinguishable. In Chang, the officer had returned the defendant's license after a check did not show any outstanding warrants and obtained a consent to search which was not related to the warrant check. There is similar dicta which would be contrary to our holding in the present case in State v. Robinson, 740 So.2d 9 (Fla. 1st DCA 1999) and State v. Arnold, 475 So.2d 301 (Fla. 2d DCA 1985). Robinson is distinguishable for the same reason as Chang, and in Arnold a citizen had complained of suspicious boat activity at night on the Caloosahatchee River.
We are not certifying conflict with the dicta in these cases because, under Article V, Section 3(b)(4), our supreme court has discretionary jurisdiction to review any "decision" of a district court of appeal that is certified to be in direct conflict with a decision of a different district court of appeal. We do not consider a conflict by virtue of dicta to present conflicting "decisions."[1]
We conclude that, in the present case, at the point in time after the officer had *1153 inspected appellant's driver's license, the consensual encounter had ended. When the officer retained it in order to investigate further by running a warrant check, no reasonable person would have felt free to leave. The search which produced the cocaine, accordingly, was the fruit of an unlawful seizure and violated the Fourth Amendment. The court erred in denying the motion to suppress.
WARNER and FARMER, JJ., concur.
NOTES
[1] Our reluctance to certify conflict should not be interpreted as discouraging the state from seeking discretionary review under Article V, Section 3(b)(3) which authorizes the supreme court to review conflicting decisions where there is no certification of conflict because: (1) whether the conflicting language in Chang, Robinson and Arnold is dicta is a close question, and (2) we may be wrong in our interpretation of the supreme court's opinion in Lightbourne.