838 So.2d 705 (2003)
Lorenzo GOLPHIN, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-1848.
District Court of Appeal of Florida, Fifth District.
March 7, 2003.
James B. Gibson, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Appellee.
TORPY, J.
Appellant challenges the denial of his motion to suppress based upon a purported violation of the prohibition against unreasonable *706 searches and seizures contained within the Florida and United States constitutions. We affirm.
Appellant was standing with a group of about five men on a public sidewalk in front of an apartment building when uniformed Daytona Beach police officers approached. Although some of the individuals walked away as police approached, Appellant made no attempt to leave the area. One of the officers asked Appellant for his identification, which he voluntarily relinquished. Using the identification, the officer ran a computer check to determine whether Appellant had any outstanding warrants. While waiting for the results of the computer check, which took no more than a couple of minutes, Appellant told the officer that he had a history of arrests and that he probably had an "open warrant." In fact, the computer check revealed that Appellant was the subject of an outstanding warrant, and he was arrested. A search incident to arrest resulted in the discovery of drugs and paraphernalia, which gave rise to the pending case.
The lower court found that the outstanding arrest warrant was discovered as a result of a "consensual encounter" and, therefore, denied Appellant's motion to suppress the contraband. Appellant, citing Baez v. State, 814 So.2d 1149 (Fla. 4th DCA 2002), rev. granted, 835 So.2d 269 (Fla. Dec.5, 2002), contends that the court erred. We write to express our disagreement with the court's holding in Baez.
In Baez, the court held that an otherwise "consensual encounter" becomes a "seizure" when an officer "retains" a person's identification (after it was voluntarily surrendered to the officer) for a sufficient length of time to complete a warrants check. Id. at 1152-53. This holding appears to create a bright-line rule that pertains regardless of the circumstances. In announcing its decision, the Fourth District Court acknowledged contrary authority from the First and Second District Courts, which it dismissed as "dicta."[1] Moreover, it sought to factually distinguish decisions of the Florida Supreme Court and United States Supreme Court which we believe are controlling.[2] For the reasons stated herein, we declare conflict with the Fourth District Court's holding in Baez.
In Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), uniformed officers boarded a bus during a stopover and asked Bostick, a passenger, if they could see his identification and bus ticket, which he voluntarily surrendered. After noting that the names matched, the officers immediately returned the items to him. However, the officers continued to converse with Bostick explaining that they were narcotics agents in search of drugs. They requested that Bostick consent to a search of his luggage, and he agreed. The *707 search revealed contraband resulting in Bostick's arrest.
In rejecting the Florida Supreme Court's application of a per se rule, the Court held that the appropriate test for determining whether a citizen encounter constitutes a Fourth Amendment seizure is "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would `have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Id. at 437, 111 S.Ct. 2382 (quoting Michigan v. Chesternut, 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)). Under this analysis, said the Court, the encounter does not "trigger Fourth Amendment scrutiny [until] it loses its consensual nature." Id. at 434, 111 S.Ct. 2382 (emphasis added). In other words, any consent given must not be the product of "intimidation or harassment" by police, as considered from the perspective of a reasonable person. Id. at 438, 111 S.Ct. 2382.[3]
The court in Baez attempted to distinguish Bostick by noting that, in Bostick, the police immediately returned the identification after confirming that it matched the name on the bus ticket, which was the apparent purpose for which the police requested the identification. Conversely, in Baez, like the instant case, the police held the identification while they checked for warrants. We do not see why this minor factual distinction should lead to a different legal conclusion. Bostick tells us that the focus is on whether the police have communicated something that would intimidate a reasonable person into giving consent. Clearly, the request by police to see the citizen's license (a fact common to Bostick, Baez and the instant case) does not implicate the Fourth Amendment. Absent any further conduct by police that causes the encounter to lose its "consensual nature," whether police keep the license long enough to compare it to a bus ticket or for a few minutes to make a warrants check should not make a difference for Fourth Amendment purposes. The citizen would be free to withdraw his consent at any time by, for example, asking that his license be immediately returned, and the refusal to comply by police would certainly amount to a detention.
We have considered whether the mere retention of property (in this case a license) by police might be tantamount to a "seizure," because the reasonable citizen might view the police conduct as a form of intimidation. If this were the case, however, then consent searches, such as that which was upheld in Bostick, could never pass Fourth Amendment scrutiny, because the mere retention of the property for sufficient time to perform a search by consent would constitute a per se seizure. Rather, we think that when a citizen voluntarily relinquishes possession of his property to police, reasonably implicit in such consent is that the police will retain the property for the period of time reasonably needed to accomplish the police purpose or until the consent is withdrawn, whichever first occurs. Moreover, a reasonable person, free from the guilt of criminal conduct, who voluntarily turns his property over to police, should feel free to request its return if he desires to go about his business. See State v. Luckay, 697 So.2d *708 221 (Fla. 5th DCA 1997) (observing that a "reasonable person" is one who is not guilty of criminal conduct).
In sum, we believe Baez to be wrongly decided first, because it creates a per se rule, which the Supreme Court in Bostick rejected in favor of the "totality of the circumstances" test, and second, because it reaches what we believe to be the wrong conclusion when the proper test is applied. See People v. Cole, 256 Ill.App.3d 590, 194 Ill.Dec. 545, 627 N.E.2d 1187 (1994).
In applying the Bostick test to the instant case, we conclude that the trial court properly denied the motion. The police behavior in approaching the men obviously failed to communicate an intent to restrict the men. Indeed, some of the men walked away from the police without incident. There was no indication that police sought out Appellant or threatened him or intimidated him in any way. Appellant was fully cooperative and volunteered information about his arrest history. Finally, Appellant did not manifest any desire to leave, nor did he request that his identification be returned. The police communicated nothing, by word or act, to lead Appellant to reasonably conclude that he was not free to leave.
The trial judge found that Appellant consented to the encounter with police, and we concur that Appellant's consent, when all circumstances are considered, was not the product of intimidation or harassment as viewed from the position of a reasonable person.
AFFIRMED.
PALMER, J., concurs.
GRIFFIN, J., concurs specially in result only, without opinion.
NOTES
[1] State v. Robinson, 740 So.2d 9 (Fla. 1st DCA 1999); State v. Chang, 668 So.2d 207 (Fla. 1st DCA 1996); State v. Arnold, 475 So.2d 301 (Fla. 2d DCA 1985).
[2] Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); Lightbourne v. State, 438 So.2d 380 (Fla.1983). Baez also relied upon several federal decisions. First, United States v. Jefferson, 906 F.2d 346 (8th Cir.1990), which is factually very different. There, the trooper refused a request by defendant to go to the bathroom, asked defendant to sit in the trooper's car, and the trooper sat next to defendant in the trooper's car. Second, United States v. Thompson, 712 F.2d 1356 (11th Cir.1983), which is distinguished on its facts and has questionable vitality in light of Bostick and United States v. De La Rosa, 922 F.2d 675 (11th Cir.1991). Finally, United States v. Jordan, 958 F.2d 1085 (D.C.Cir.1992), which is, we submit, contrary to the Supreme Court's holdings in Bostick and Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
[3] The first issue in deciding any "consensual encounter" case is whether the citizen gave actual consent, and, if so, the scope of the consent given. This is a factual question. Jones v. State, 658 So.2d 178 (Fla. 1st DCA 1995). Next, the court must determine whether the consent was the result of intimidation by police, which must be determined from the vantage point of a reasonable man, not based upon actual, subjective fears of the involved citizen. State v. Baldwin, 686 So.2d 682 (Fla. 1st DCA 1996).