COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Clements and McClanahan
Argued at Richmond, Virginia


DONALD JAMES BAKER

MEMORANDUM OPINION[*] BY
v.       Record No. 1311-03-2       JUDGE ROSEMARIE ANNUNZIATA
MAY 11, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Gregory W. Franklin, Assistant Public Defender (Office of the
Public Defender, on briefs), for appellant.

Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Donald James Baker appeals his conviction of possession of cocaine with intent to

distribute, contending that the trial court erroneously ruled that he consented to a pat-down

search that disclosed the cocaine on his person and that any consent given was tainted as a result

of the illegal seizure of his person. Baker also contends that the evidence was not sufficient to

prove that he intended to distribute the cocaine. For the reasons that follow, we affirm.

I. Background

On appeal, we view the evidence, and all inferences that may be reasonably drawn from

the evidence, in a light most favorable to the Commonwealth as the party prevailing below.

Garcia v. Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97, 99 (2003). So viewed, the

evidence establishes that on August 2, 2002, Richmond Police Officer Richard Lloyd received a

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

report of "an armed-party fight" at 1804 Q Street.  Lloyd, Officer Robert Sprinkle, Sergeant

Flick and "a couple other officers" responded to the call.

As the officers approached the front door, they "noticed there was a lot of noise inside, a

lot of yelling.  It seemed like there was a lot of commotion inside."  The police knocked on the

door and were allowed entry.  One of the occupants said, "everything was alright, [the police]

could leave, that everything was fine."  The police nonetheless asked everyone present for

identification.

Donald James Baker and a number of other occupants voluntarily gave their

identification to the officers.  Officer Lloyd gathered the identifications received and exited the

premises to check them on the computer in his police vehicle.  Within two or three minutes,

Baker approached Officer Sprinkle, who had remained in the house while Officer Lloyd took the

identifications to his car.  Baker asked Sprinkle if he could retrieve his identification.  Sprinkle

told Baker, "Officer Lloyd has it.  As soon as he's done with it, he'll give it back to you."  Baker

then exited the premises, walking directly past Officer Sprinkle.  Although Officer Sprinkle

made no attempt to stop Baker, he followed behind him because he "did not want . . . Officer

Lloyd to end up getting in a fight or anything like that."

Baker approached Officer Lloyd, who was checking the identifications on the computer

in his vehicle, and told the officer that he wanted his identification back because he wanted to

leave.  The officer gave Baker his identification and informed him that he was free to leave.

Baker took his identification and paused for a moment, looking at his license.  Lloyd then said

the police had received "a report of a subject that might have been armed and asked [Baker] if he

had any weapons on him."  Baker responded that he did not and, when Lloyd asked him whether

he could conduct a pat down, Baker raised both hands in the air, saying nothing in response.  In

the course of the pat down, Lloyd found crack cocaine, individually wrapped in 48 separate

plastic bags, 46 in a larger bag and two in Baker's sock. It was later determined that the drugs weighed a total of 3.6 grams. No other drug paraphernalia was found.

Before trial, Baker moved to suppress the Commonwealth's evidence. The trial court denied the motion to suppress, finding that Baker consented to the pat down. The trial court also determined that Baker was illegally seized when Officer Lloyd left the premises with his identification. Nonetheless, it concluded that Baker's consent to the pat down was not tainted by the illegality because the seizure ended when Officer Lloyd returned the identification and informed Baker that he was free to leave.

On appeal, Baker contends that he was illegally seized when Officer Sprinkle told him he would have to wait to retrieve his identification until Officer Lloyd finished checking it. Baker also contends that the evidence fails to support the trial court's finding that he consented to the pat down of his person. Baker finally contends that the evidence was insufficient to prove he intended to distribute the cocaine. For the following reasons, we affirm.

II. Analysis

A. Legality of the Search

1. Standard of Review

"'The burden to establish that the denial of the motion to suppress constituted reversible error rests with the defendant.'" Fisher v. Commonwealth, 42 Va. App. 395, 400, 592 S.E.2d 377, 379 (2004) (quoting King v. Commonwealth, 39 Va. App. 306, 308, 572 S.E.2d 518, 519 (2002)). Whether a person is seized within the meaning of the Fourth Amendment presents a mixed question of law and fact which we review *de novo*. See Watson v. Commonwealth, 19 Va. App. 659, 663, 454 S.E.2d 358, 361 (1995). "Whether a consent to search was voluntarily given 'is a question of fact to be determined from the totality of all the circumstances.'" Londono v. Commonwealth, 40 Va. App. 377, 402, 579 S.E.2d 641, 653 (2003) (quoting

Schneckloth v. Bustamante, 412 U.S. 218, 227 (1973)).  Regardless of the question, however, we are bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them.  McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997).  We accord deference to a trial court's factual findings because

> the trial court is not limited to the stark, written record.  The trial court has before it the living witnesses and can observe their demeanors and inflections.  In assessing the credibility of witnesses and the weight and significance to be given their testimony, the trial court enjoys advantages not available on appeal.

Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (en banc).

### 2.  The Police Did Not Illegally Seize Baker

We find that Baker was not seized when Officer Lloyd took his identification from the premises to the patrol car.  We also find that Baker was not seized when Officer Sprinkle told him he would have to wait until Officer Lloyd finished checking his identification before retrieving it.

It is axiomatic that the police may initiate conversations with individuals so long as such encounters are consensual.  See Florida v. Bostick, 501 U.S. 429, 435 (1991).  Thus, no seizure occurs when police ask an individual for permission to examine his or her identification.  Id.  In McCain v. Commonwealth, 261 Va. 483, 545 S.E.2d 541 (2001), the defendant argued before the Supreme Court of Virginia that he was seized within the meaning of the Fourth Amendment when the police asked for and obtained his driver's license and retained his license to conduct a computer search for outstanding warrants.  Id. at 489, 545 S.E.2d at 544.  Reversing a ruling by this Court, the Supreme Court held "that the Court of Appeals erred in concluding that Officer Thomas effected a seizure of McCain when he requested identification from McCain and conducted a check for outstanding warrants."  Id. at 490, 545 S.E.2d at 545.  The Supreme Court's decision in McCain controls here.

- 4 -

When the police entered the residence in the instant case, they asked everyone for identification. In response to this request, Baker voluntarily relinquished his identification. The fact that Officer Lloyd took Baker's license to his patrol car for a few minutes is of no moment; "whether police keep the license long enough to . . . make a warrants check should not make a difference for Fourth Amendment purposes." Golphin v. State, 838 So.2d 705, 707 (Fla. Ct. App. 2003). "[W]hen a citizen voluntarily relinquishes possession of his property to police, reasonably implicit in such consent is that the police will retain the property for the period of time reasonably needed to accomplish the police purpose or until the consent is withdrawn, whichever first occurs." Id. We therefore hold that Baker was not seized when Officer Lloyd took Baker's license to the patrol car to perform a check on it and that the trial court erred as a matter of law when it ruled otherwise.[1] See McCain, 261 Va. at 490, 545 S.E.2d at 545.

We also find that Baker was not seized when Officer Sprinkle failed to return the identification upon his request. Officer Sprinkle's response that Officer Lloyd would "give it back" to him "as soon as he's done with it" constituted a seizure of his person, according to Baker, because no reasonable person would feel free to leave the scene without his identification. We disagree with Baker's contention because the police did not use physical force to restrain him and because Baker did not submit to an assertion of authority.

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980); McCain, 261 Va. at 490, 545 S.E.2d at 545. The Supreme Court of Virginia has held that "a seizure occurs when a law enforcement officer, by physical force or some display of authority, restrains

---

[1] The trial court's erroneous ruling on this issue is inconsequential to the resolution of the issues remaining on appeal.

in some manner a citizen's freedom of movement. Only when such restraint is imposed is there a basis for invoking Fourth Amendment safeguards." McCain, 261 Va. at 490-91, 545 S.E.2d at 545. "A seizure does not occur in the absence of physical force used by a law enforcement officer or a defendant's submission to an officer's assertion of authority." Id. at 491, 545 S.E.2d at 546.

Here, the record plainly reveals that no officer physically restrained Baker. Indeed, Baker does not suggest that he was physically restrained. Baker impliedly argues, however, that Officer Sprinkle asserted his authority when he told him that he could not obtain the identification until Officer Lloyd finished a computer check. Assuming, without deciding, that such a statement amounts to an assertion of authority, Baker did not submit to it. Officer Sprinkle and Baker testified that Baker exited the residence notwithstanding Sprinkle's rejection of Baker's request for the return of his identification. In doing so, Baker passed directly in front of Officer Sprinkle, who made no attempt to stop him. Officer Sprinkle followed Baker to Officer Lloyd's car, where Baker asked for his license. Lloyd promptly handed Baker his license and informed him that he was free to go. These facts, viewed in a light most favorable to the Commonwealth, establish that Baker did not submit to any assertion of authority. Accordingly, we hold that Baker was not seized when Officer Sprinkle denied his request for the return of his license.[2] See California v. Hodari D., 499 U.S. 621, 628 (1991) (discussing Brower v. Inyo County, 489 U.S. 593, 596 (1989), a case in which the Court declined to find a seizure had occurred where defendant was killed after being chased by police cars with flashing lights for twenty miles).

---

[2] Because we hold that Baker was not illegally seized, we do not address his contention that his consent to the pat down was the product of an illegal seizure.

3. Baker Consented to the Pat Down

Baker further argues that he did not impliedly consent to the pat down, as the trial court below found. We affirm, however, because the trial court's finding is supported by credible evidence.

> "'Consent to a search . . . must be unequivocal, specific and intelligently given . . . and it is not lightly to be inferred.'" Elliotte v. Commonwealth, 7 Va. App. 234, 239, 372 S.E.2d 416, 419 (1988) (quoting Via v. Peyton, 284 F. Supp. 961, 967 (W.D. Va. 1968)). Although the consent need not be oral, mere acquiescence is not enough. See id.; Walls v. Commonwealth, 2 Va. App. 639, 645-46, 347 S.E.2d 175, 178-79 (1986). Additionally, the Commonwealth bears the burden of proving that consent was in fact given, and "that burden is heavier where the alleged consent is based on an implication." Walls, 2 Va. App. at 645, 347 S.E.2d at 178. Although the Commonwealth bears the burden of proving that consent was in fact given, Limonja v. Commonwealth, 8 Va. App. 532, 540, 383 S.E.2d 476, 481 (1989), the presence of consent is a factual question to be determined by the trier of fact. Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996). Therefore, we will only reverse the trial court's ruling on the suppression motion if plainly wrong. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

Jean-Laurent v. Commonwealth, 34 Va. App. 74, 78-79, 538 S.E.2d 316, 318 (2000). Courts have found consent to a specific request to search a person when evidenced by conduct alone, such as turning and "placing [one's] hands against the wall without prompting," Bynum, 23 Va. App. at 417, 477 S.E.2d at 753, or shrugging one's shoulders and then extending one's arms. United States v. Wilson, 895 F.2d 168, 170 (4th Cir. 1990).

Here, the trial court based its finding on testimony provided by Sprinkle and Lloyd. Both officers stated that, when Lloyd asked Baker if he would consent to a pat down, Baker said nothing and lifted his arms in the air in a gesture inviting the search. Baker contends to the contrary, citing his testimony that he raised his arms in the air and "perhaps turned around and said, 'you can see I don't have a gun on me.'" Baker argues that this statement manifests the absence of consent to the requested pat down because he demonstrated to the officers that he was

unarmed.  The trial court resolved this conflict in the evidence, finding the officers' testimony and the reasonable inferences to be drawn from their testimony more credible.  "[I]t is within the province of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to" determine a witness' credibility.  Correll v. Commonwealth, 42 Va. App. 311, 323, 591 S.E.2d 712, 718 (2004) (citations and quotations omitted).  Such determinations of a witness' credibility will be disturbed on appeal only if inherently incredible.  Id.  We do not find the officers' testimony as to Baker's actions inherently incredible.  We, therefore, uphold the trial court's ruling that Baker consented to the pat-down search, see Wilson, 895 F.2d at 170; Bynum, 23 Va. App. at 417, 477 S.E.2d at 753, and affirm its denial of his motion to suppress.

### B.  The Evidence Was Sufficient to Prove Baker Possessed the Cocaine with the Intent to Distribute

When the sufficiency of the evidence is challenged on appeal, "we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'"  Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (citation omitted).  We therefore do not ask whether we believe the "evidence at the trial established guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (quotation omitted).  We ask instead whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319).

"Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence."  Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988).  Such evidence may include the "quantity of drugs and cash possessed, the method of packaging, and whether appellant used drugs."  Poindexter v. Commonwealth, 16 Va. App. 730, 734-35, 432 S.E.2d 527, 530 (1993).  The absence of any paraphernalia suggestive of personal use is also recognized as a factor indicating an intent to distribute.  Askew v.

Commonwealth, 40 Va. App. 104, 111, 578 S.E.2d 58, 62 (2003). Additionally, expert opinion "can be considered by the fact finder together with other evidence to determine whether the Commonwealth's evidence proved beyond a reasonable doubt the intent to distribute." Id.

Here, the evidence showed that the cocaine found on Baker weighed 3.6 grams packaged in 48 separate baggies. Officer Lloyd, who qualified as an expert in the field of street-level narcotic sales, testified that the amount found on Baker was inconsistent with personal use. He further testified that the manner in which the cocaine was packaged suggested it was intended for redistribution. Moreover, no ingestion device was uncovered. See Shackleford v. Commonwealth, 32 Va. App. 307, 327, 528 S.E.2d 123, 133 (2000). We conclude that the evidence supports the trial court's determination that Baker possessed the cocaine with the intent to distribute. See id.

For the foregoing reasons, we affirm Baker's conviction.

Affirmed.