877 So.2d 800 (2004)
Vernell HOLDEN, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-2525.
District Court of Appeal of Florida, Fifth District.
July 2, 2004.
*801 James B. Gibson, Public Defender, and A.S. Rogers, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, J.
Vernell Holden appeals an order denying his motion to suppress cocaine and drug paraphernalia. We affirm.
At the suppression hearing, a police officer testified that Holden and a female were sitting in a vehicle that looked suspicious because the vehicle was backed into a space on the far side of a store. After approximately 30 minutes, another car arrived, and Holden and the female entered the second vehicle and left. The second vehicle returned approximately 15 minutes later. When the second vehicle returned, three police officers approached and questioned the occupants. Unbeknownst to the occupants, the officers requested that a canine unit be dispatched to the scene. When the dog arrived, it signaled the presence of narcotics in the car, and the officers found a small pill bottle containing two pieces of crack cocaine and burnt copper wire. Upon finding the narcotics and paraphernalia, Holden told the officers that the narcotics and paraphernalia belonged to him.
Holden testified that he was at the convenience store with the female because she and her boyfriend had a fight, and he was attempting to find her a place to stay with another female he knew who lived in Holopaw. Holden called the other female at the pay phone at the store, and then waited for the other female to arrive. Holden denied that they were backed in a parking space. Holden stated that once the female from Holopaw arrived, he and the two females left in the other car, traveled to Holopaw, and decided to return to the store to purchase beer. Holden testified that as soon as they arrived at the store, officers exited their vehicles, ordered Holden and the two females out of their vehicle, and drew their weapons. Holden stated that two police vehicles blocked their car, and that he could not have freely left without hitting a police vehicle.
The trial court found the police officers' testimony more credible than Holden's testimony, and ruled that a consensual encounter occurred between Holden and the officers, and that once the canine unit alerted on the car, the officers had probable cause to search.
Holden contends that the trial court erred in denying his motion to suppress because the trial court ignored testimony from the state's witness that demonstrated that Holden was detained. We disagree. A ruling on a motion to suppress is presumptively correct, and a reviewing court should interpret the evidence and reasonable inferences and deductions drawn from the evidence in a manner most favorable to sustaining the trial court ruling. Morris v. State, 749 So.2d 590 (Fla. 5th DCA 2000). Further, the role of the trial court is to weigh the credibility of witnesses and to resolve evidentiary conflicts, and on truly discretionary matters, the appellate court must recognize the trial court's "superior vantage *802 point." Porzio v. Porzio, 760 So.2d 1075, 1076 n. 1 (Fla. 5th DCA 2000).
Here, the trial court determined that the officers' testimony was more credible than Holden's testimony. This finding is supported by the evidence. There was testimony that the occupants voluntarily exited the car when the officers arrived, that the officers did not block the vehicle, and that the officers did not draw their weapons. There was no testimony that the officers used their overhead lights when approaching the vehicle. Furthermore, the officers testified that Holden and the occupants were free to leave at anytime. Compare Baker v. State, 754 So.2d 154 (Fla. 5th DCA 2000) (holding that defendant was detained where officer parked police car behind defendant's vehicle and activated the blue lights and siren).
We disagree with Holden's argument that the officers' request for identification resulted in a detention. When officers have no basis for suspecting a particular individual, they may generally ask questions of that individual and ask to examine the individual's identification. See Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). In Golphin v. State, 838 So.2d 705 (Fla. 5th DCA 2003), we held that a person is not seized when the person's license is kept by police for a few minutes to make a warrants check, because the person would be free to withdraw his consent at any time by, for example, asking that his license immediately be returned, and the refusal to comply by police would certainly amount to a detention. Id. Finally, we conclude that the dispatch and use of the narcotics dog did not convert the encounter into a detention. Saturnino-Boudet v. State, 682 So.2d 188 (Fla. 3d DCA 1996), is instructive:
The United States Supreme Court has held that the use of a narcotics sniff dog constitutes neither a search nor a seizure within the meaning of the Fourth Amendment. Place, 462 U.S. at 707, 103 S.Ct. at 2644-45[, 77 L.Ed.2d 110]. Accordingly, this court has said:
[O]nce the defendant was legally stopped, the use of a sniff dog was not an unconstitutional search under the Fourth Amendment. A sniff dog's "alert" can constitute probable cause to conduct a search. Once probable cause existed to search the vehicle, no warrant was needed to authorize the search. Just as no police officer need close his eyes to contraband in plain view, no police officer armed with a sniff dog need ignore the olfactory essence of illegality.

Id. at 193 (citations omitted) (emphasis supplied). In the instant case, the trial court found that the officers had a consensual encounter with Holden and the other occupants of the car. As Saturnino-Boudet pointed out, the use of a canine's sense of smell is similar to an officer's use of his eyes. The use of a canine unit during a consensual encounter is similar to an officer's finding illegal items in plain-view during a consensual encounter. See State v. Carley, 633 So.2d 533 (Fla. 2d DCA 1994) (reversing motion suppressing evidence where the officers and defendant were involved in a consensual encounter and a sawed-off shotgun was discovered in plain view).
The order denying Holden's motion to suppress is AFFIRMED.
SHARP, W. and MONACO, JJ., concur.