STRINGER, Judge,
Concurring in part and dissenting in part.
I concur in the reversal in section II but dissent from the affirmance in section III. As to section II, I agree with Judge Cana-dy that this court is bound by Matheson to reverse the trial court’s denial of Tedder’s motion to suppress the evidence gathered as a result of Rex’s alert. Therefore, I join in section II of Judge Canady’s opinion without further comment.
However, I dissent from section III of Judge Canady’s opinion. In my view, the encounter between Creghan and Tedder went bad before the canine officer arrived on the scene, and the trial court should have suppressed all of the evidence that was obtained after the warrants check on Tedder came back clear.
The testimony at the motion to suppress hearing established that Sergeant Creghan was on patrol at 3:45 a.m. when he saw a pick-up truck parked next to pay phones behind a 24-hour Mobil gas station. Cre-ghan pulled up next to the truck and asked Tedder what he and his companion were doing in the Fort Myers area. After Ted-der told Creghan that they were in the area because his companion had a job setting tile, Creghan looked in the open bed of the truck. There, he saw fishing poles and a large, opaque Tupperware container, but no tile-setting tools. Despite not knowing whether there were tile-setting tools in the large Tupperware container or in the cab of the truck, Creghan found Tedder’s explanation suspicious.[1] Thus, Creghan requested identification from both Tedder and his companion. Both immediately provided driver’s licenses which showed addresses in Panama City. Creghan then requested a warrants check on both men.
The warrants checks on both men came back clear; however, Creghan did not return the driver’s licenses to Tedder or his companion. Instead, Creghan separated *1057 the two men and instructed Tedder to stand with one back-up officer while Cre-ghan and another back-up officer moved a short way off to speak with Tedder’s companion. Creghan spoke alternately with Tedder and his companion for twenty to thirty minutes, all while retaining Tedder’s driver’s license and while having Tedder stand with a back-up officer.
During the twenty to thirty minutes of questioning, Tedder and his companion gave conflicting accounts of their trip to the Fort Myers area and their activities since they had arrived. Because of this, Creghan decided to have the back-up officers complete “Field Interrogation Cards” on both men. Creghan handed Tedder’s driver’s license to one of the back-up officers to use in completing the “Field Interrogation Card.” At the same time, Cre-ghan called for a canine officer to respond to the scene. The canine officer arrived with Rex while the back-up officers were completing the Field Interrogation Cards, and Rex alerted to Tedder’s truck. The resulting search revealed physical evidence that tied Tedder to a home invasion robbery that had occurred two weeks earlier.
Tedder subsequently sought to suppress the evidence obtained during the time between the completion of the warrants check and Rex’s alert on his truck. This evidence consisted primarily of statements that, while not directly incriminating, could have raised a reasonable suspicion that Tedder and his companion had been involved in criminal activity. After considering the testimony of both Creghan and Tedder, the trial court found that the two had engaged in a consensual encounter until Rex alerted on Tedder’s truck. This finding was based primarily on the fact that Creghan did not use his emergency lights or sirens, did not display his badge, did not remove his gun from his holster, did not order Tedder around, and did not handcuff or physically restrain Tedder. According to the trial court, these facts showed that Creghan did not use his authority to keep Tedder from leaving and going about his business, thus rendering the encounter a purely consensual one. Based on these findings, the trial court denied Tedder’s motion to suppress the evidence obtained during the twenty to thirty minutes between the warrants check and Rex’s alert. I believe this was error.
When considering a trial court’s ruling on a motion to suppress, this court must defer to those factual findings that are supported by competent, substantial evidence. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). This court then reviews the application of the law to those facts de novo. Id. Here, the trial court’s factual findings are supported by competent, substantial evidence so far as they go. However, the trial court’s ruling completely ignores the undisputed fact that Creghan retained Tedder’s identification for twenty to thirty minutes after the warrants check came back clear while he separated Tedder and his companion, had them each stand with a back-up officer, and then alternately questioned them about their activities. In my opinion, this fact is dispositive of this case and establishes that the initial consensual encounter morphed into an illegal detention.
As a general proposition, the police may request identification from a citizen during a consensual encounter and may briefly retain that identification for a reasonable time without converting the consensual encounter into a detention. See, e.g., Florida v. Bostick, 501 U.S. 429, 434-35, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (holding that “even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual’s identifica *1058 tion, and request consent to search his or her luggage, as long as the police do not convey a message that compliance with their requests is required” (internal citations omitted)); Golphin v. State, 945 So.2d 1174, 1177 (Fla.2006) (holding that the temporary retention of an identification card during a warrants check did not constitute a detention when the identification had been voluntarily given to police during a consensual encounter); Mays v. State, 887 So.2d 402, 403 (Fla. 2d DCA 2004); Watts v. State, 788 So.2d 1040 (Fla. 2d DCA 2001) (en banc). When the police have obtained and retained a citizen’s identification during a consensual encounter, the question of whether that consensual encounter has been transformed into an investigatory detention is answered by considering the totality of the circumstances, including those involving the officer’s approach to the citizen, the officer’s demeanor during the encounter, and the circumstances surrounding the request for and retention of the identification. Golphin, 945 So.2d at 1184. Thus, if the police retain the citizen’s identification for longer than the time reasonably necessary to conduct that warrants check or if the police engage in other actions that reflect a show of authority, the totality of the circumstances may show that these actions have transformed the consensual encounter into an investigatory detention. See, e.g., Bostick, 501 U.S. at 435, 111 S.Ct. 2382; Florida v. Royer, 460 U.S. 491, 501-02, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Mays, 887 So.2d at 403 n. 2 (noting that “there are instances when a police officer may transform a consensual encounter into a stop by retaining a driver’s license in order to unreasonably delay the encounter”); Brye v. State, 927 So.2d 78, 82 (Fla. 1st DCA 2006) (holding that when an officer retained the citizen’s identification after a warrants check came back clean, the citizen was effectively seized); State v. Campbell, 911 So.2d 192, 192-93 (Fla. 4th DCA 2005) (holding that a consensual encounter becomes a detention when the police continue to retain a citizen’s identification after a warrants check has come back clean), review granted, 925 So.2d 1031 (Fla.2006); Golphin v. State, 838 So.2d 705, 707 (Fla. 5th DCA 2003) (noting that the police may engage in “further conduct” after a warrants check that causes a consensual encounter to lose its consensual nature), aff'd, 945 So.2d 1174 (Fla.2006). In that case, if the police do not have the reasonable suspicion necessary to support an investigatory detention after the completion of the warrants check, the continued retention of the citizen’s identification constitutes an illegal detention. Campbell, 911 So.2d at 193.
In this case, the undisputed evidence shows that Creghan retained Tedder’s driver’s license while he questioned Tedder for twenty to thirty minutes after the warrants check came back clear. Moreover, even when Creghan decided to stop questioning Tedder, he did not return Tedder’s driver’s license but instead gave it to the back-up officer for use in completing a “Field Interrogation Card.” Based on these undisputed facts, the trial court erred when it found that the consensual encounter lasted until Rex alerted to Ted-der’s truck. While the trial court’s finding that Creghan and the other officers did not show authority by using their emergency lights or sirens, displaying their badges, removing their guns from their holsters, or ordering Tedder around is supported by the evidence, the trial court made no finding whatsoever as to the effect of Cre-ghan’s retention of Tedder’s driver’s license for twenty to thirty minutes on the consensual nature of the encounter. This extended retention of a driver’s license is exactly the type of action that can transform an otherwise consensual encounter *1059 into an investigatory detention. Golphin, 945 So.2d at 1185 (“While a noncompulsory request for an individual’s identification has been unlikely to implicate the Fourth Amendment in isolation, the retention of identification during the course of further interrogation or search certainly factors into whether a seizure has occurred.”); Mays, 887 So.2d at 403 n. 2.
Moreover, the fact that the document retained by Creghan was Tedder’s driver’s license reinforces the nonconsensual nature of the encounter after the completion of the warrants check. In Golphin, the supreme court recognized that when a police officer obtains and then retains a driver’s license from a motorist, that motorist is “ ‘effectively immobilized.’ ” Golphin, 945 So.2d at 1186 (quoting United States v. Thompson, 712 F.2d 1356, 1359 (11th Cir. 1983)). “ ‘A reasonable person in these circumstances would not have believed himself free to leave. If Thompson had tried to drive away he could have been arrested for driving without a license.’” Golphin, 945 So.2d at 1186 (quoting Thompson, 712 F.2d at 1359-60). The court then recognized that the same analysis would not necessarily apply if the person speaking with the officer was a pedestrian. Golphin, 945 So.2d at 1186, 1188.
Here, Tedder and his companion were found standing next to Tedder’s truck behind an open gas station. Tedder lived in Panama City, and his encounter with Cre-ghan occurred approximately 500 miles away in Fort Myers. Tedder told Cre-ghan that he was not in the area permanently; he had driven to Fort Myers with his companion because his companion had a job setting tile in the area. In addition, Tedder had personal belongings in his truck. Under these circumstances, Ted-der was more akin to a motorist than a pedestrian. Faced with this situation, no reasonable person would believe that he could abandon his driver’s license, his personal belongings, and his only means of transportation 500 miles from home and simply walk away from the encounter.
I recognize that the supreme court has eschewed any attempt to draw a bright line when it comes to determining what actions may constitute a detention for Fourth Amendment purposes. See Golphin, 945 So.2d at 1183-84. I do not attempt to draw such a bright line here, nor do I attempt to suggest that an officer must thrust identification back upon a citizen immediately once a warrants check comes back clear. I suggest only that retaining the driver’s license of a motorist who is 500 miles from home while conducting a twenty to thirty minute interrogation of that motorist constitutes a detention of that motorist that must be supported by a reasonable suspicion of criminal activity. Because Creghan had no such reasonable suspicion in this case, I believe the trial court should have granted Tedder’s motion to suppress the evidence obtained after the warrants check came back clear.

. Creghan noted that the two men saw his cruiser before he pulled behind the Mobil station and that they took no steps to leave. Creghan testified that he found it suspicious that the men did not try to get in the truck and leave before he arrived. Presumably, Creghan would have also found it suspicious if the men had, in fact, tried to leave.