# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-0351
_____

STATE OF FLORIDA,

    Appellant,

    v.

CEDRICK POWELL,

    Appellee.

_____


On appeal from the Circuit Court for Jefferson County.
Dawn Caloca-Johnson, Judge.


August 6, 2025


TANENBAUM, J.

Cedrick Powell stands charged with felony possession of a controlled substance, misdemeanor possession of cannabis, and two counts of bringing those substances into the state. These charges arose from an investigatory traffic stop followed by a probable cause search of Powell's car, culminating in the discovery of thirteen grams of marijuana and less than one gram of ecstasy. Prior to trial, Powell moved to suppress all evidence obtained from the stop and search, contending they were unlawful. The trial court agreed and granted Powell's motion after finding that the stop was pretextual. The State now appeals the interlocutory order, which we have authority to consider. *See* Fla. R. App. P. 9.140(c)(1)(B). The State argues that the law enforcement officer who initiated the stop had an objectively reasonable basis for doing

so, and that he subsequently had probable cause to search Powell's car. We agree and vacate the order granting suppression.

I

A Florida Highway Patrol ("FHP") trooper sat stationary in his patrol car, observing eastbound traffic on I-10. He was part of the Criminal Interdiction Unit, and he was tasked with intercepting the flow of contraband and criminal activity. The trooper noticed a black Chevrolet sedan traveling eastbound, the driver being "seated very low in his vehicle and pushed back behind the b-pillar"—a posture the trooper took to be "not normal" and "unusual." Leaving his post at mile marker 219, the trooper began following the sedan, eventually matching its pace. The driver, having glanced over and noticed the trooper traveling alongside him, gestured as if to ask whether he should pull over. The trooper signaled to continue driving and positioned his patrol car behind the sedan. The trooper, believing the driver's behavior to have been "unusual" and "suspicious," asked FHP's regional communications center to verify the validity of the sedan's Louisiana tag against available databases.

The driver then exited I-10, stopping at a gas station to refuel. The trooper followed him but stopped at a different gas station. While at the station, the trooper received information from the communications center about the sedan: that the registered owner was a man named Cedrick Powell—who did not have a valid license associated with the car, only a long-expired Louisiana identification card. Running the identification card through his internal system, the trooper accessed a photograph of Powell, from which he confirmed Powell as the driver of the sedan he had been observing.

After refueling his car, Powell resumed driving eastbound on I-10, the trooper following closely behind. Believing Powell to be operating the sedan without a valid driver's license, the trooper initiated an investigatory traffic stop. Upon approaching the passenger side of Powell's car, about a foot away from the window, the trooper detected the odor of "fresh green marijuana." He chose not to disclose this information to Powell, instead asking Powell for his driver's license, registration, and proof of insurance. The trooper also explained to Powell the reason for the stop, informing

2

him that only an expired Louisiana identification card appeared when he ran Powell's tag, not a valid driver's license. Powell confirmed that he had a valid Florida driver's license but that it had been stolen. The trooper then asked Powell to exit his car, and Powell followed the trooper to the patrol car. Roughly eight minutes into the stop, dispatch confirmed Powell did in fact have a valid Florida driver's license.

As this unfolded, though, Powell and the trooper engaged in conversation outside of the patrol car. The trooper asked Powell whether there were any firearms or drugs in the sedan, to which Powell laughed and responded, "No." The trooper told Powell that he smelled marijuana in his car. Powell did not correct him and claim that he had hemp. Instead, he admitted to having smoked marijuana in his car the previous evening, but he claimed no marijuana presently was in his car. He also confirmed he did not have a medical marijuana card. The trooper explained to Powell that he would be conducting a probable cause search of the car, and Powell remarked he did not give his consent. The trooper noted concerning behavior: "his head was down, his arms were crossed," which "typically [are] things that [the trooper would] see with people who are nervous and anticipating maybe the discovery of something that might get them in trouble." The trooper asked Powell if he was "good," and placed Powell in handcuffs after he responded "no." After placing Powell in the backseat of the patrol car, the trooper started searching Powell's sedan—as part of the search, opening the gas-tank door, front hood, and trunk, as well as Powell's luggage.

Returning to the patrol car after conducting the search, the trooper gave Powell *Miranda* warnings and notified Powell that he found thirteen grams of raw, unburnt marijuana and less than one gram of ecstasy in the car. Powell identified the pills as "jiggles" and an "upper." The trooper then placed Powell under arrest.

The State later charged Powell by information with one count of possession of a controlled substance, a third-degree felony, under section 893.03, Florida Statutes; one count of bringing a controlled substance into the state, a third-degree felony, under section 893.13(6)(a), Florida Statutes; one count of bringing cannabis into the state, a third-degree felony, under section

893.13(5)(b); and one count of possession of cannabis, a first-degree misdemeanor, under section 893.13(6)(b).

Before trial, Powell moved to suppress the items discovered in his car, as well as his statements, arguing the trooper had conducted an unlawful stop, detention, and search. At the hearing on the motion, the State contended the trooper's subjective motivations for the stop were irrelevant, emphasizing the trooper had an objective basis for initiating it—his belief Powell was driving without a valid license—and the trooper had probable cause to search Powell's car. Nevertheless, the court granted the motion, basing its decision on the "profiling" exhibited in this case. The court explained,

> This is pretext. Because the only reason he would go after any vehicle is because he suspects they're transporting illegal drugs. And I don't – he would never have followed or pursued Mr. Powell had he not come up with the pretext argument that he looks like a drug dealer because of the way he is sitting in his vehicle.

The State appealed the trial court's order granting the motion to suppress, asserting the same arguments it made in opposition to the motion.

## II

### A

We initially turn to the State's first contention—that the trial court erred by granting the motion based on the appearance of pretextual motivation for the stop. The State asserts that the basis for the traffic stop was objectively reasonable.

It hardly needs stating that the Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. The Florida Constitution contains a similar guarantee, mandating that right "shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." Art. I, § 12, Fla. Const. This protection reaches temporary detention during traffic stops because a police officer's stopping an automobile, "even if

4

only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809−10 (1996); *see Delaware v. Prouse*, 440 U.S. 648, 653 (1979) ("The Fourth and Fourteenth Amendments are implicated . . . because stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief."); *State v. Jones*, 483 So. 2d 433, 435 (Fla. 1986) ("Unquestionably, stopping an automobile and detaining its occupant constitutes a seizure within the meaning of the fourth amendment to the United States Constitution.").

An investigative traffic stop is thus "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren*, 517 U.S. at 810; *see also United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) ("Whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person, and the Fourth Amendment requires that the seizure be reasonable." (internal citations, brackets, and quotations omitted)). An "investigatory stop" of a car is lawful, "pending inquiry," if "the police officer reasonably suspects" there has been "a vehicular violation"; he "need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." *Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009); *see also Rodriguez v. United States*, 575 U.S. 348, 354 (2015) ("A seizure for a traffic violation justifies a police investigation of that violation."); *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (explaining existing precedent that "the Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has a particularized and objective basis for suspecting the particular person stopped of criminal activity" (internal quotations omitted)).

In this context, the U.S. Supreme Court rejected the pretext objection to a stop, adopting instead a purely objective test. *See Whren*, 517 U.S. at 813 (noting that prior cases "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved," so "[s]ubjective intentions play no role" in the Fourth Amendment analysis). Rather, we apply a strictly objective test,

which asks only "whether the particular officer who initiated the traffic stop had an objectively reasonable basis for making the stop." *Dobrin v. Fla. Dep't of High. Saf. & Motor Veh.*, 874 So. 2d 1171, 1174 (Fla. 2004); *see also Holland v. State*, 696 So. 2d 757, 759 (Fla. 1997) (adopting the objective test set forth in *Whren v. United States*). A law enforcement officer may initiate an investigative traffic stop when he has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417−18 (1981); *Cresswell v. State*, 564 So 2d. 480, 481 (Fla. 1990) ("To justify [the stop of a vehicle], an officer must have a reasonable suspicion based on articulable facts that criminal activity 'may be afoot.'" (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968))).

"Because it is a less demanding standard, reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." *Glover*, 589 U.S. at 380 (internal quotations omitted). It "depends on the factual and practical considerations of everyday life on which *reasonable and prudent men*, not legal technicians, act." *Id.* (citations omitted). "[S]cientific certainty" is not required. *Id.* A law enforcement officer derives this "particular and objective basis" from "the totality of the circumstances—the whole picture" based on the facts presented to him. *Cortez*, 449 U.S. at 417; *State v. Baez*, 894 So. 2d 115, 117 (Fla. 2004) ("[T]he totality of the circumstances controls in cases involving the Fourth Amendment." (citing *State v. Butler*, 655 So. 2d 1123, 1125 (Fla. 1995))). The full picture is principally composed of "the events which occurred leading up to the stop" and "the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

This inquiry is two-fold. First, this "analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers," observations from which a law enforcement officer draws inferences and deductions such "that might well elude an untrained person." *Cortez*, 449 U.S. at 418. Second, that process "must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." *Id.*;

*see also Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) ("[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."); *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (noting consideration for the totality of the circumstances "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person'" (quoting *Cortez*, 449 U.S. at 418)).

Applying these precepts to the issue before us, we find the "whole picture" presented to the trooper provided "a particularized and objective basis" to suspect that Powell was operating his car without a valid driver's license, a misdemeanor offense in Florida. *Cortez*, 449 U.S. at 713; *Arvizu*, 534 U.S. at 273.; *see* § 322.03(1), Fla. Stat. (prohibiting any person from driving a motor vehicle on a highway in the state unless that person has a valid driver's license); *see also* § 322.39, Fla. Stat. (providing a violation of chapter 322, Florida Statutes, is a misdemeanor offense). To be sure, Powell's "unusual" and "suspicious" posture first caught the trooper's attention, prompting a deeper probe based on those observations. That, however, is not relevant here, for the trooper did not initiate the traffic stop on that basis alone. *See Whren*, 517 U.S. at 818−19.

Before initiating the stop, the trooper knew the car had a valid Louisiana tag, the car was registered to Powell, and the car was associated with an expired Louisiana identification card in Powell's name. The trooper also identified the driver of the car as Powell after obtaining a photograph of Powell. The trooper, however, did not know Powell had a valid Florida driver's license until Powell claimed to have one that had been stolen, and dispatch did not confirm Powell had one until eight minutes into the stop. *Cf. Glover*, 589 U.S. at 380–81 (explaining that a police officer is permitted "to make commonsense judgments and inferences about human behavior" and "need not rule out the possibility of innocent conduct" (internal citation and quotation omitted)). That is, at the time of the stop, the trooper "possessed no exculpatory information—let alone sufficient information to rebut the reasonable inference that" Powell was driving his Louisiana-registered car without a valid Louisiana license. *Id.* at

7

386. On these facts, the trooper "combin[ed] database information and commonsense judgments" to "form a reasonable suspicion that [Powell] was potentially engaged in specific criminal activity—driving" without a valid driver's license, rendering a sufficient basis for further investigation. *Id.* at 380. The stop was justified.

B

This brings us to the State's second claim, that the odor of raw marijuana alone was sufficient to justify the search of Powell's car. Subject to few exceptions, searches conducted without a warrant are per se unreasonable under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception permits law enforcement to search a car without a warrant, so long as probable cause exists to believe it contains evidence of a crime. *See Carroll v. United States*, 267 U.S. 132, 149, 155–56 (1925) (holding that a "search and seizure without a warrant" is valid if "made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction"—that is, "contraband" that "is being illegally transported"); *United States v. Ross*, 456 U.S. 798, 799 (1982) (summarizing *Carroll v. United States* as holding "that a warrantless search of an automobile stopped by police officers who had probable cause to believe the vehicle contained contraband was not unreasonable within the meaning of the Fourth Amendment"); *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."); *see also State v. Betz*, 815 So. 2d 627, 633−34 (Fla. 2002). This "exception to the warrant requirement . . . applies only to searches of vehicles that are supported by probable cause," such that "a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *Ross*, 456 U.S. at 809; *see also Betz*, 815 So. 2d at 633 (explaining that "[p]robable cause exists where the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed" (internal quotations and citation omitted)).

A probable cause determination calls for a "totality of the circumstances" approach, the consideration of the "whole picture" presented by the facts available to the law enforcement officer. *Cortez*, 449 U.S. at 417; *see Florida v. Harris*, 568 U.S. 237, 243 (2013) ("A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." (internal quotations and brackets omitted)). This court must not "dismiss outright any circumstances that were 'susceptible of innocent explanation.'" *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018) (quoting *Arvizu*, 534 U.S. at 277).

Viewed in this context, the record before us amply supports a finding that probable cause existed to search Powell's car. The trooper had several years of experience with the Criminal Interdiction Unit—the sole mission of which is to interdict drug couriers and other criminal activity—and he had conducted roughly 1,500 traffic stops. He was familiar with the odor of marijuana, having smelled it "on a regular basis" while conducting those stops. Powell also confirmed to the trooper that he did not have a medical marijuana card. And it must not be overlooked that Powell openly admitted to the trooper that he had smoked marijuana in his car the night before, rather than attempt to mitigate the trooper's observation by claiming that the smell emanated from hemp.

Powell responds that the odor of raw marijuana alone is insufficient to justify the search of his car. He points out to us that some states—like Florida—now permit the purchase, possession, and use of marijuana for medical purposes, as well as have legalized the smoking and possession of hemp—a substance whose odor Powell argues is indistinguishable from raw marijuana. *See* § 381.986, Fla. Stat. (establishing the legal basis for the "dispensing" of marijuana to a "qualified patient" by a "qualified physician" for "medical use"); § 581.217, Fla. Stat. (creating the "state hemp program"); *see also* 21 U.S.C. § 802(16)(B)(i) (specifically excluding hemp from the definition of marijuana). He acknowledges a chain of case decisions holding that the odor of burnt marijuana alone is sufficient to establish probable cause but argues this precedent no longer applies, as its scent is

indistinguishable from legal hemp and its presence potentially from a legal source.

We need not address the validity of this argument based on the facts presented here. As already noted, before the trooper searched the car, Powell had stated he did not have a medical marijuana card—so his possession of marijuana at all events would have been at least a misdemeanor offense even under current Florida law. Moreover, Powell's response to the trooper's comment about his smelling marijuana emanating from the car was not a protest—that it was instead hemp—but rather a corroboration—that it was simply burnt marijuana from a previous evening. Our disposition is mandated by *Betz*, in which the supreme court took into account not just the officer's detection of a strong marijuana odor coming out of the defendant's car window—which "certainly warranted a belief that an offense had been committed"—but also the surrounding circumstances, like the defendant's nervous behavior, the combination of which "unquestionably provided the police officers on the scene probable cause to search the" car in its "entirety." *Betz*, 815 So. 2d at 633; *see Ross*, 458 U.S. at 825 ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

\*\*\*

In finding the trooper initiated the traffic stop on a pretextual basis and granting the motion to suppress, the trial court committed legal error. The trooper had an objectively reasonable basis for conducting the traffic stop and, during the ensuing investigation into the reason for the stop, the trooper developed probable cause sufficient to justify his searching Powell's car. The order granting suppression cannot stand.

VACATE and REMAND for further proceedings.

KELSEY and M.K. THOMAS, JJ., concur.

10

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

James Uthmeier, Attorney General, and Miranda L. Butson, Assistant Attorney General, Tallahassee, for Appellant.

Jessica J. Yeary, Public Defender, and Danielle Jorden, Assistant Public Defender, Tallahassee, for Appellee.